# In re Jose Luis LOPEZ-MEZA, Respondent

## File A92 026 109 - Florence

*Decided Decembe*r 21, 1999

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

Under Arizona law, the offense of aggravated driving under the influence, which requires the driver to know that he or she is prohibited from driving under any circumstances, is a crime involving moral turpitude.

Jose A. Bracamonte, Esquire, Phoenix, Arizona, for respondent

Amy C. Martin, Assistant District Counsel, for the Immigration and Naturalization Service

Before: Board En Banc: SCHMIDT, Chairman; DUNNE, Vice Chairman; SCIALABBA, Vice Chairman; VACCA, HOLMES, HURWITZ, VILLAGELIU, FILPPU, COLE, MATHON, GUENDELSBERGER, JONES, GRANT, MOSCATO, and MILLER, Board Members. Concurring and Dissenting Opinion: ROSENBERG, Board Member.

HOLMES, Board Member:

In a decision dated November 16, 1998, an Immigration Judge found that the Immigration and Naturalization Service had not met its burden of demonstrating that the respondent was removable as charged under section 237(a)(2)(A)(ii) of the Immigration and Nationality Act, 8 U.S.C. § 1227(a)(2)(A)(ii) (Supp. II 1996), and ordered the removal proceedings terminated. The Service has appealed from that decision. The appeal will be sustained and the record will be remanded to the Immigration Judge for further proceedings.

## I. PROCEDURAL AND FACTUAL BACKGROUND

The respondent is a native and citizen of Mexico who adjusted his status to that of a lawful permanent resident on September 20, 1989, under section 245A of the Act, 8 U.S.C. § 1255a (1988). On June 19, 1998, the

respondent was convicted in Arizona of aggravated driving or being in actu-al physical control of a vehicle while under the influence of intoxicating liquor or drugs ("DUI"), in violation of sections 28-692(A)(1) and 28-697(A)(1) of the Arizona Revised Statutes, for an offense that occurred on January 29, 1997. The respondent was also convicted on June 19, 1998, of aggravated DUI, in violation of sections 28-1381(A)(1) and 28-1383(A)(1) of the Arizona Revised Statutes, for a separate offense that occurred on March 1, 1998.[1] The respondent received a sentence of 4 months' incarcer-ation for each offense, to be served concurrently, followed by 5 years' pro-bation.[2]

The Immigration Judge found that the respondent's aggravated DUI convictions were not for crimes involving moral turpitude. Without specif-ically addressing the fact that each conviction was for aggravated DUI, the Immigration Judge determined that the Service had not established that "driving under the influence of intoxicating liquor is, in fact, a crime involv-ing base or vile conduct or moral turpitude as classically defined." Consequently, the Immigration Judge concluded that the charge of remov-ability could not be sustained, and he terminated the removal proceedings. The Service appeals from that decision, arguing that a conviction for aggra-vated DUI is a conviction for a crime involving moral turpitude.

## II. ISSUE PRESENTED ON APPEAL

The issue raised in this case is whether the respondent's two convictions for aggravated DUI, in violation of sections 28-697(A)(1) and 28-1383(A)(1) of the Arizona Revised Statutes, are convictions for crimes involving moral turpitude within the scope of section 237(a)(2)(A)(ii) of the Act.

## III. RELEVANT PROVISIONS OF ARIZONA LAW

The respondent's first aggravated DUI conviction was in violation of sec-tions 28-692(A)(1) and 28-697(A)(1) of the Arizona Revised Statutes. At the time he committed the offense, section 28-692(A)(1) provided as follows:

---

[1]Section 28-692 of the Arizona Revised Statutes was renumbered as section 28-1381. 1996 Ariz. Sess. Laws ch. 76, § 3, *as amended by* 1997 Ariz. Sess. Laws ch. 1, § 106 (effec-tive Oct. 1, 1997). Section 28-697 was renumbered as section 28-1383 and amended. 1996 Ariz. Sess. Laws ch. 76, §§ 3, 25, *as amended by* 1997 Ariz. Sess. Laws ch. 1, § 108 (effec-tive Oct. 1, 1997); 1997 Ariz. Sess. Laws ch. 220, § 82.

[2]Because of the manner in which these proceedings progressed, the respondent's con-viction records were not placed into evidence. However, the respondent conceded the facts alleged in the Notice to Appear (Form I-862) regarding the nature of the convictions.

It is unlawful for any person to drive or be in actual physical control of any vehicle within this state under any of the following circumstances:

1. While under the influence of intoxicating liquor, any drug, a vapor releasing substance containing a toxic substance or any combination of liquor, drugs or vapor releasing substances if the person is impaired to the slightest degree.

Ariz. Rev. Stat. Ann. § 28-692(A)(1) (1997). Section 28-697(A) provided as follows:

A person is guilty of aggravated driving or actual physical control while under the influence of intoxicating liquor or drugs if the person does either of the following:

1. Commits a violation of § 28-692 [driving under the influence] or this section while the person's driver's license or privilege to drive is suspended, cancelled, revoked or refused, or the person's driver's license or privilege to drive is restricted as a result of violating § 28-692 or under § 28-694 [administrative license suspension for driving under the influence].

2. Commits a third or subsequent violation of § 28-692 or this section or is convicted of a violation of § 28-692 or this section and has previously been convicted of any combination of convictions of § 28-692 or this section or acts in another state, a court of the United States or a tribal court which if committed in this state would be a violation of § 28-692 or this section within a period of sixty months. For the purposes of this paragraph, an order of a juvenile court adjudicating the person delinquent is equivalent to a conviction.

3. Commits a violation of § 28-692 while a person under fifteen years of age is in the vehicle.

Ariz. Rev. Stat. Ann. § 28-697(A)(1)-(3) (1997).

The respondent's second conviction for aggravated DUI was in violation of sections 28-1381(A)(1) and 28-1383(A)(1) of the Arizona Revised Statutes. Section 28-1381(A)(1) provides as follows:

It is unlawful for a person to drive or be in actual physical control of a vehicle in this state under any of the following circumstances:

1. While under the influence of intoxicating liquor, any drug, a vapor releasing substance containing a toxic substance or any combination of liquor, drugs or vapor releasing substances if the person is impaired to the slightest degree.

Ariz. Rev. Stat. Ann. § 28-1381(A)(1) (1998). Section 28-1383(A) provides as follows:

A person is guilty of aggravated driving or actual physical control while under the influence of intoxicating liquor or drugs if the person does either of the following:

1. Commits a violation of § 28-1381 [driving under the influence] or this section while the person's driver license or privilege to drive is suspended, canceled, revoked or refused or while a restriction is placed on the person's driver license or privilege to

drive as a result of violating § 28-1381 or under § 28-1385 [administrative license suspension for driving under the influence].

2. Within a period of sixty months commits a third or subsequent violation of § 28-1381 or this section or is convicted of a violation of § 28-1381 or this section and has previously been convicted of any combination of convictions of § 28-1381 or this section or acts in another state, a court of the United States or a tribal court that if committed in this state would be a violation of § 28-1381 or this section. For the purposes of this paragraph and § 28-1382, an order of a juvenile court adjudicating the person delinquent is equivalent to a conviction.

3. Commits a violation of § 28-1381 while a person under fifteen years of age is in the vehicle.

Ariz. Rev. Stat. Ann. § 28-1383(A)(1)-(3) (1998).

## IV. ANALYSIS

The issue presented in this case involves the meaning and scope of the phrase "crime involving moral turpitude" in section 237(a)(2)(A)(ii) of the Act. "Moral turpitude" is a term that has deep roots in the law.[3] *Matter of Khourn,* 21 I&N Dec. 1041 (BIA 1997). While this term has been the subject of interpretation for many years, its precise meaning and scope have never been fully settled. Nearly 50 years ago, the phrase "crime involving moral turpitude" was challenged as being unconstitutionally vague, but a divided Supreme Court found that its meaning was sufficiently definite to withstand constitutional scrutiny, in part because, even at that time, the phrase had been part of the immigration laws for more than 60 years. *Jordan v. De George,* 341 U.S. 223, 229-32 (1951). The Court noted that "difficulty in determining whether certain marginal offenses are within the meaning of the language under attack as vague does not automatically render a statute unconstitutional for indefiniteness." *Id.* at 231.[4] Subsequent to the Supreme Court's decision in *Jordan*, both the courts and this Board have referred to moral turpitude as a "nebulous concept" with ample room for differing definitions of the term. *Franklin v. INS,* 72 F.3d 571, 573 (8th Cir. 1995), *aff'g Matter of Franklin*, 20 I&N Dec. 867 (BIA 1994); *see also*

---

[3]As stated by the Supreme Court, "the term 'moral turpitude' first appeared in the immigration laws in the Act of March 3, 1891, 26 Stat. 1084, ch. 551, which directed the exclusion of 'persons who have been convicted of a felony or other infamous crime or misdemeanor involving moral turpitude.'" *Jordan v. De George,* 341 U.S. 223, 229 n.14 (1951).

[4]In dissent, Justice Jackson noted the "wearisome repetition of cliches attempting to define 'moral turpitude,'" *Jordan v. De George, supra*, at 239 (Jackson, J., dissenting), and concluded that the phrase "crime involving moral turpitude" had "no sufficiently definite meaning to be a constitutional standard for deportation." *Id.* at 232.

*Matter of Perez-Contreras,* 20 I&N Dec. 615, 617-20 (BIA 1992), and cases cited therein.

It is clear, however, that the meaning of this phrase is a matter of federal law and that any analysis of whether a crime involves moral turpitude necessarily will entail agency and judicial construction.[5] We have held that moral turpitude refers generally to conduct that is inherently base, vile, or depraved, and contrary to the accepted rules of morality and the duties owed between persons or to society in general. *Matter of L-V-C-,* Interim Decision 594 (BIA 1999); *Matter of Danesh,* 19 I&N Dec. 669 (BIA 1988); *see also Rodriguez-Herrera v. INS,* 52 F.3d 238 (9th Cir. 1995); *Grageda v. INS*, 12 F.3d 919, 921 (9th Cir. 1993) (noting that courts have described moral turpitude in general terms as "an 'act of baseness or depravity contrary to accepted moral standards'" (quoting *Guerrero de Nodahl v. INS,* 407 F.2d 1405, 1406 (9th Cir. 1969)), and as "'basically offensive to American ethics and accepted moral standards'" (quoting *Castle v. INS,* 541 F.2d 1064, 1066 (4th Cir. 1976))). Under this standard, the nature of a crime is measured against contemporary moral standards and may be susceptible to change based on the prevailing views in society. *See generally United States v. Francioso*, 164 F.2d 163 (2d Cir. 1947); *Ng Sui Wing v. United States*, 46 F.2d 755 (7th Cir. 1931); *Matter of G-,* 1 I&N Dec. 59, 60 (BIA 1941) (stating that the standard by which an offense is to be judged is "that prevailing in the United States as a whole, regarding the common view of our people concerning its moral character").

Furthermore, while crimes involving moral turpitude often involve an evil intent, such a specific intent is not a prerequisite to finding that a crime involves moral turpitude. *See Rodriguez-Herrera v. INS, supra,* at 240 (noting that the United States Court of Appeals for the Ninth Circuit has "held only that without an evil intent, a statute does not necessarily involve moral turpitude"); *Gonzalez-Alvarado v. INS*, 39 F.3d 245, 246 (9th Cir. 1994) (noting that "[a] crime involving the willful commission of a base or depraved act is a crime involving moral turpitude, whether or not the statute requires proof of evil intent"); *Grageda v. INS, supra*, at 922 (holding that the "combination of the base or depraved act and the wilfulness of the action . . . makes the crime one of moral turpitude"); *Guerrero de Nodahl v. INS, supra,* at 1406; *Matter of Franklin, supra*, at 868 ("Among the tests to determine if a crime involves moral turpitude is whether the act is accompanied by a vicious motive or a corrupt mind."); *Matter of Danesh, supra;*

---

[5]There is little available legislative history to provide guidance regarding the meaning of the phrase "crime involving moral turpitude." *See Cabral v. INS,* 15 F.3d 193, 195 (1st Cir. 1994) (concluding that the "legislative history leaves no doubt . . . that Congress left the term 'crime involving moral turpitude' to future administrative and judicial interpretation").

*Matter of Wojtkow*, 18 I&N Dec. 111 (BIA 1981); *Matter of Medina*, 15 I&N Dec. 611, 614 (BIA 1976) (stating that the "presence or absence of a corrupt or vicious mind is not controlling" and that criminally reckless behavior may be a basis for a finding of moral turpitude), *aff'd sub nom. Medina-Luna v. INS*, 547 F.2d 1171 (7th Cir. 1977). *But see Matter of Khourn, supra,* at 1046 ("The Board has held that 'evil intent' is a requisite element for a crime involving moral turpitude."); *Matter of Flores*, 17 I&N Dec. 225, 227 (BIA 1980) (holding that an "evil or malicious intent is said to be the essence of moral turpitude"); *Matter of Abreu-Semino*, 12 I&N Dec. 775, 777 (BIA 1968) (finding that "crimes in which evil intent is not an element, no matter how serious the act or harmful the consequences, do not involve moral turpitude").

Certain crimes have been readily categorized as involving moral turpitude. For example, the Supreme Court has noted that "fraud has consistently been regarded as such a contaminating component in any crime that American courts have, without exception, included such crimes within the scope of moral turpitude." *Jordan v. De George, supra*, at 229. Other crimes involving acts of baseness or depravity have been found to be crimes involving moral turpitude even though they have no element of fraud and, in some cases, no explicit element of evil intent (e.g., murder, rape, robbery, kidnaping, voluntary manslaughter, some involuntary manslaughter offenses, aggravated assaults, mayhem, theft offenses, spousal abuse, child abuse, and incest). *See* 6 Charles Gordon, et al., *Immigration Law and Procedure* § 71.05[1][d] (rev. ed. 1999), and cases cited therein. Statutory rape has been found to involve moral turpitude even though it has no intent element. *See Marciano v. INS*, 450 F.2d 1022 (8th Cir. 1971), *cert. denied*, 405 U.S. 997 (1972); *Castle v. INS, supra*, at 1066 (stating that the "inherent nature" of the offense "is so basically offensive to American ethics and accepted moral standards as to constitute moral turpitude per se"); *Matter of Dingena*, 11 I&N Dec. 723 (BIA 1966). While it is generally the case that a crime that is "malum in se" involves moral turpitude and that a "malum prohibitum" offense does not, this categorization is more a general rule than an absolute standard. *See Kempe v. United States*, 151 F.2d 680, 688 (8th Cir. 1945).

In determining whether a crime involves moral turpitude, the specific statute under which the conviction occurred is controlling. *See Matter of Khourn, supra*, at 1044; *Matter of Franklin, supra,* at 868-69. If the statute defines a crime in which turpitude necessarily inheres, then, for immigration purposes, the offense is a crime involving moral turpitude. *Matter of Short*, 20 I&N Dec. 136, 137 (BIA 1989). Thus, whether a particular crime involves moral turpitude "is determined by the statutory definition or by the nature of the crime not by the specific conduct that resulted in the conviction." *McNaughton v. INS*, 612 F.2d 457, 459 (9th Cir. 1980). The crime must be one that necessarily involves moral turpitude without consideration

of the circumstances under which the crime was, in fact, committed. *See Goldeshtein v. INS,* 8 F.3d 645, 647 (9th Cir. 1993).

## V. CONVICTIONS UNDER SECTIONS 28-697(A)(1) AND 28-1383(A)(1)

In the present case, we examine whether the respondent's convictions under sections 28-697(A)(1) and 28-1383(A)(1) of the Arizona Revised Statutes are for crimes involving moral turpitude. Upon review of the above statutes, we cannot agree with the Immigration Judge's determination that this respondent's aggravated DUI offenses are not crimes involving moral turpitude.

We note that the only specific finding of the Immigration Judge was that "driving under the influence of intoxicating liquor" had not been shown to be a crime involving moral turpitude. We do not disagree with the Immigration Judge in this regard. Simple DUI is ordinarily a regulatory offense that involves no culpable mental state requirement, such as intent or knowledge. *See Matter of Abreu-Semino, supra.* In *State v. Thompson*, 674 P.2d 895 (Ariz. Ct. App. 1983), simple DUI under section 28-692 of the Arizona Revised Statutes was found not to be a malum in se offense because it did not require a culpable mental state. We are aware of no case law specifically addressing the question whether simple DUI is a crime involving moral turpitude in the immigration context. The absence of such law suggests a long historical acceptance that a simple DUI offense does not inherently involve moral turpitude, and we are not persuaded to conclude otherwise.[6] We find that the offense of driving under the influence under Arizona law does not, *without more*, reflect conduct that is necessarily morally reprehensible or that indicates such a level of depravity or baseness that it involves moral turpitude.

The instant case, however, involves convictions for aggravated DUI under sections 28-697(A)(1) and 28-1383(A)(1) of the Arizona Revised Statutes. Convictions under these statutory provisions may involve two separate forms of aggravating misconduct. A person may be found guilty of

---

[6]Some federal and state courts within the jurisdiction of the Ninth Circuit have found in nonimmigration contexts that simple DUI is a malum in se offense. *E.g., Bronson v. Swinney,* 648 F. Supp. 1094, 1100 (D. Nev. 1986), *rev'd on other grounds sub nom. Bronson v. McKay*, 870 F.2d 1514 (9th Cir. 1989); *People v. Weathington*, 282 Cal. Rptr. 170, 181 (Cal. Ct. App. 1991) (stating that a person who drives under the influence of intoxicating liquor "is guilty of an innately reprehensible act, which every reasonable person would decry" and citing *United States v. Barner*, 195 F. Supp. 103, 108 (N.D. Cal. 1961)); *State v. Darchuck*, 156 P.2d 173 (Mont. 1945); *State v. Davis*, 296 P.2d 240 (Or. 1956).

aggravated DUI by committing a DUI offense while knowingly driving on a suspended, canceled, or revoked license *or* by committing a DUI offense while already on a restricted license owing to a prior DUI. We find that the serious misconduct described in either of these statutes involves a baseness so contrary to accepted moral standards that it rises to the level of a crime involving moral turpitude. A contrary conclusion is not mandated by the absence of a specific element of intent in the statutes because the aggravated circumstances necessary for a conviction under either section establish a culpable mental state adequate to support a finding of moral turpitude.

A conviction for aggravated DUI under section 28-697(A)(1) or section 28-1383(A)(1) requires a showing that the offender was "knowingly" driving with a suspended, canceled, revoked, or refused license. *See State v. Cramer,* 962 P.2d 224 (Ariz. Ct. App. 1998); *State v. Superior Court*, 945 P.2d 1334 (Ariz. Ct. App. 1997); *State v. Agee*, 887 P.2d 588 (Ariz. Ct. App. 1994). Thus, in order for a motorist to be convicted of aggravated DUI in Arizona, the state must prove that the defendant knew or should have known that his license was suspended.[7] *State v. Williams*, 698 P.2d 732, 734 (Ariz. 1985) (holding that driving without a license necessarily involves a culpable mental state); *see also Wright v. State*, 656 P.2d 1226 (Alaska 1983) (indicating that those who drink knowing that they have committed crimes while drunk in the past, as well as those who drink knowing that they will be driving, commit a malum in se act by their drinking); *State ex rel. Sullivan v. Price*, 63 P.2d 653, 655 (Ariz. 1937) (recognizing that revocation of driving privileges eliminates drivers shown to be dangerous); *State v. Jansing*, 918 P.2d 1081 (Ariz. Ct. App. 1996) (finding that a motorist with a suspended license who drove while intoxicated accepted the risk of possible harm to others); *People v. Weathington*, 282 Cal. Rptr. 170 (Cal. Ct. App. 1991) (regarding notice to a motorist when he has been convicted of a prior DUI offense); *Matter of Magallanes*, 22 I&N Dec. 1 (BIA 1998) (discussing the inherently reckless act of drunk driving and the unjustifiable risk of harm of drunk driving).

Consequently, aside from the culpability that is often, but not inherently, present in a simple DUI offense, an individual who drives under the

---

[7]The parties presented no case law pertaining to the provisions of sections 28-697(A)(1) and 28-1383(A)(1) that relate to driving under the influence while a person's driver's license or privilege to drive is "restricted." However, this aggravating circumstance is specifically tied to restrictions on driving *resulting* from a prior DUI violation. We have little difficulty concluding that an individual who has been given restricted permission to drive, specifically as a result of having driven under the influence, who commits another DUI while under such a restriction has engaged in conduct that contemporary society would deem to be grossly offensive to "'American ethics and accepted moral standards.'" *Grageda v. INS, supra*, at 921 (quoting *Castle v. INS, supra*, at 1066).

influence in violation of the relevant provisions of section 28-697(A)(1) or section 28-1383(A)(1) does so with the knowledge that he or she should not be driving under any circumstances. We find that a person who drives while under the influence, knowing that he or she is absolutely prohibited from driving, commits a crime so base and so contrary to the currently accepted duties that persons owe to one another and to society in general that it involves moral turpitude.

Citing *Matter of Short, supra*, the concurring and dissenting opinion argues that to consider the individual elements of these offenses together is a matter of "bootstrapping" into a finding of moral turpitude through some "undefined synergism." *Matter of Lopez-Meza,* 22 I&N Dec.1188, at 1197 (Rosenberg, concurring and dissenting). The relevant discussion in *Matter of Short*, however, pertained to a simple assault with intent to commit a felony of unproven seriousness. We did not hold in that decision that a combination of acts that are included as elements of a specific offense could never, when added together, build to such a heightened deviance from accepted moral standards as to reach a level of conduct deemed morally turpitudinous. In fact, additional aggravating elements can often transform an offense that otherwise would not be a crime involving moral turpitude into one that is.

The finding of moral turpitude in the crimes in the present case does not arise simply from an amalgamation of distinct separate offenses; rather, it results from a building together of elements by which the criminalized conduct deviates further and further from the private and social duties that persons owe to one another and to society in general. There is inherent difficulty in determining whether marginal offenses are crimes involving moral turpitude. *See Jordan v. De George, supra,* at 231. In our view, a simple DUI offense is such a marginal crime. However, when that crime is committed by an individual who knows that he or she is prohibited from driving, the offense becomes such a deviance from the accepted rules of contemporary morality that it amounts to a crime involving moral turpitude.

Thus, we find that the Immigration Judge erred in terminating removal proceedings based on his determination that the respondent's two aggravated DUI convictions were not for crimes involving moral turpitude.


## VI. CONCLUSION

We conclude that the respondent's convictions for aggravated DUI, in violation of sections 28-1383(A)(1) and 28-697(A)(1) of the Arizona Revised Statutes, constitute convictions for a crime involving moral turpitude. Therefore, we find that the respondent has been convicted of two crimes involving moral turpitude, which did not arise from a single scheme, and that he is removable as charged. Accordingly, we will sustain the appeal

and vacate the decision of the Immigration Judge. The record will be remanded to the Immigration Judge to provide the respondent an opportunity to apply for any relief from removal for which he may be eligible.

**ORDER:** The appeal of the Immigration and Naturalization Service is sustained.

**ORDER:** The decision of the Immigration Judge is vacated, and the record is remanded to the Immigration Judge for further proceedings consistent with the foregoing opinion.

Board Member Michael J. Heilman did not participate in the decision in this case.

*CONCURRING AND DISSENTING OPINION:* Lory Diana Rosenberg, Board Member

I respectfully concur in part and dissent in part.

Boiled down to its essentials, the case before us presents a rather confounding legal question. That question is: whether a conviction for an aggravated driving offense made up of two distinct regulatory violations—driving under the influence, and driving while a restriction is placed on a driver's license—neither of which independently involves moral turpitude, can be deemed to constitute a conviction for a crime involving moral turpitude.

The majority recognizes that Arizona state law does not require a culpable mental state to convict for driving under the influence. The majority also concedes that "a long historical acceptance that a simple DUI offense does not inherently involve moral turpitude" warrants the conclusion that driving under the influence does *not* reflect conduct that is morally reprehensible or indicate a level of depravity that would support classifying it as a crime involving moral turpitude. *Matter of Lopez-Meza*, 22 I&N Dec. 1188, at 1194 (BIA 1999). While I agree with the majority that a simple DUI offense *is not* a crime involving moral turpitude, I disagree with the conclusion that an aggravated DUI offense *is* a crime involving moral turpitude.

I find the majority's conclusion that the respondent's two convictions for aggravated driving under Arizona state law amount to convictions for crimes involving moral turpitude (because each offense requires both driving under the influence and a prior restriction on the driver's license or privilege to drive) to be premised on little more than some "undefined synergism" that we previously have rejected as inadequate to constitute a crime involving moral turpitude. *Matter of Short*, 20 I&N Dec. 136, 139 (BIA 1989) (ruling that if neither the offense of aiding and abetting nor the offense of assault with intent to commit a felony upon the person of a minor independently involves moral turpitude, then the two crimes combined do not involve moral turpitude). A state's designation of an offense as "aggravated" is not determinative of its character, and it does not convert criminal

1197

conduct that is devoid of moral turpitude into a crime that involves moral turpitude.

Consequently, I concur in part and dissent in part.


I. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

It appears that the respondent has lived in the United States since shortly after his birth some 24 years ago. He has been a lawful permanent resident for the past 10 years.

In a Notice to Appear (Form I-862) issued on July 24, 1997, the Immigration and Naturalization Service charged the respondent with removability on the ground that he was convicted of two crimes involving moral turpitude not arising out of a single scheme of criminal misconduct. *See* section 237(a)(2)(A)(ii) of the Immigration and Nationality Act, 8 U.S.C. § 1227(a)(2)(A)(ii) (Supp. II 1996). The bases for this charge are the respondent's June 19, 1998, convictions under Arizona state law for two offenses of "aggravated driving or actual physical control of a vehicle while under the influence of intoxicating liquor or drugs" ("DUI"), committed in violation of sections 28-692(A)(1) and 28-697(A)(1), and 28-1381(A)(1) and 28-1383(A)(1), of the Arizona Revised Statutes.[1]

Section 28-692(A)(1) of the Arizona state statute, subsequently reenacted as section 28-1381(A)(1), provided, in pertinent part, that it is unlawful for any person to "drive or be in actual physical control of any vehicle" within the state "while under the influence of intoxicating liquor, any drug, a vapor releasing substance containing a toxic substance" or any combination thereof. Ariz. Rev. Stat. Ann. § 28-692(A)(1) (1997); Ariz. Rev. Stat. Ann. § 28-1381(A)(1) (1998). Section 28-697(A)(1), reenacted as section 28-1383(A)(1), provided, in pertinent part, that a person is guilty of aggravated driving or actual physical control while under the influence of intoxicating liquor or drugs if the person

> [c]ommits a violation of [driving under the influence] or this section while the person's driver's license or privilege to drive is suspended, cancelled, revoked or refused, or the person's driver's license or privilege to drive is restricted as a result of violating § 28-692 [driving under the influence] or under § 28-694 [administrative license suspension for driving under the influence].

Ariz. Rev. Stat. Ann. § 28-697(A)(1); Ariz. Rev. Stat. Ann. § 28-1383(A)(1). These sections also penalize a third violation, including the adjudication of a juvenile as delinquent, and any violation for driving under the influence while a person under the age of 15 is in the vehicle. *See* Ariz.

---

[1]The two convictions refer to offenses committed on January 29, 1997, and March 1, 1998.

Rev. Stat. Ann. §§ 28-697(A)(2)-(3), 28-1383(A)(2)-(3).

At a hearing before an Immigration Judge in November 1998, the respondent admitted having been convicted under the designated statutes, but denied being removable as charged. The parties appear to agree that the respondent was convicted and was sentenced to 4 months for each offense, to be served concurrently, with a period of probation to follow.[2]

After briefing from both parties, the Immigration Judge ruled that a conviction for aggravated driving under the influence for which a sentence of less than 1 year is imposed does not amount to a conviction for a crime involving moral turpitude. Specifically, the Immigration Judge concluded that the Service failed to meet its burden of proving that the crimes of driving under the influence of which the respondent was convicted are offenses involving the type of base or vile conduct that classically characterizes a crime involving moral turpitude. *See* section 240(c)(3)(A) of the Act, 8 U.S.C. § 1229a(c)(3)(A) (Supp. II 1996) (requiring the Service to prove a lawful permanent resident's removability by clear and convincing evidence).

## II. ANALYSIS: WHETHER AN OFFENSE INVOLVES MORAL TURPITUDE

Whether the respondent is removable as charged, i.e., whether he has been convicted of a crime involving moral turpitude, depends on the nature of the respondent's conviction. In determining whether a crime involves moral turpitude, the statute under which the conviction occurred is controlling. *Matter of Franklin*, 20 I&N Dec. 867 (BIA 1994), *aff'd*, 72 F.3d 571 (8th Cir. 1995), *cert. denied*, 519 U.S. 834 (1996); *Matter of Short, supra; see also Goldeshtein v. INS*, 8 F.3d 645, 647 (9th Cir. 1993) (citing *McNaughton v. INS*, 612 F.2d 457, 459 (9th Cir. 1980), which held that whether a crime is one involving moral turpitude is determined by the statutory definition or by the nature of the crime, not by the specific conduct that resulted in the conviction).

If the statute defines a crime in which turpitude necessarily inheres, then, for immigration purposes, the conviction is for a crime involving

---

[2]The fact that the respondent's concurrent sentences were only 4 months for each offense eliminates the possibility of treating his offenses as constituting a crime of violence under federal immigration law. *See* section 101(a)(43)(F) of the Act, 8 U.S.C. § 1101(a)(43)(F) (Supp. II 1996) (requiring a sentence of at least 1 year); *Matter of Puente*, 22 I&N Dec. 1006 (BIA 1999) (holding that driving under the influence, for which the sentence was at least 1 year, is an aggravated felony); *see also Matter of Aldabesheh*, 22 I&N Dec. 983 (BIA 1999) (ruling that concurrent sentences may not be aggregated to determine the length of sentence for purposes of immigration law).

moral turpitude. *See Matter of Khourn*, 21 I&N Dec. 1041 (BIA 1997). Our consideration of the nature of the crime is limited to the elements necessary to prove a conviction under the relevant criminal statute. If the statute is plain on its face, additional evidence indicating the actual conduct of the respondent is not pertinent to our determination for immigration purposes. *See Matter of Perez-Contreras*, 20 I&N Dec. 615, 618 (BIA 1992) (holding that where the elements of the statute necessary to convict for assault did not include use of a weapon, such evidence in the record of conviction had no bearing on the nature of the offense).

Where the relevant statute encompasses both offenses that involve moral turpitude and those that do not involve moral turpitude, we may then look to the judgment of conviction; and, if the judgment of conviction does not indicate the nature of the respondent's crime, we may then look to other documents that are considered part of the record of conviction. *Matter of Short, supra*, at 137-38 (citing *Matter of Esfandiary*, 16 I&N Dec. 659, 661 (BIA 1979), as defining the "record of conviction" to include the indictment, plea, verdict, and sentence); *see also Matter of Rodriguez-Cortes,* 20 I&N Dec. 587, 588 (BIA 1992) (including an "information" as part of the "record of conviction"); *Matter of Mena*, 17 I&N Dec. 38 (BIA 1979) (considering a transcript of arraignment in which the respondent pled guilty). We look to the record of conviction "to determine what law, or portion of law, was violated." *Matter of Esfandiary, supra*, at 660.

The record before us on appeal does not contain a judgment of conviction or any documents that make up a record of conviction. In fact, the record does not indicate anything more than that the respondent violated the statutory sections charged in the Notice to Appear. Therefore, for purposes of determining the nature of the misdemeanor offenses committed by the respondent, all we have before us is the language of the statutes that he was convicted of violating.

As discussed in greater detail below, the statute under which the respondent was convicted does not indicate that an evil intent is required to sustain a conviction for the offense. Similarly, as the Immigration Judge found, the state statutory violation of driving under the influence with a restricted license does not require that any element of the offense, which must be proved to sustain a conviction, involve base or vile conduct. Moreover, the fact that a state has denominated an offense as "*aggravated driving*" does not change the character of that offense.

### A. Evil Intent, or Base and Vile Conduct, as a Factor

Crimes involving moral turpitude typically refer to criminal conduct that is inherently base, vile, or depraved, and contrary to the accepted rules of morality and the duties owed between persons or to society in general. *See Matter of Danesh*, 19 I&N Dec. 669, 670 (BIA 1988); *Matter of Flores*,

17 I&N Dec. 225, 227 (BIA 1980). Neither the seriousness of the offense nor the severity of the sentence imposed is determinative of whether a crime involves moral turpitude. Instead, the characterization of the offense relates to the offender's evil intent or corrupt mind. *Matter of Serna*, 20 I&N Dec. 579, 581 (BIA 1992) (reiterating that a crime involving moral turpitude is an act that is per se morally reprehensible and intrinsically wrong or malum in se); *see also Matter of Flores, supra; Matter of Abreu-Semino*, 12 I&N Dec. 775 (BIA 1968); *Matter of P-*, 6 I&N Dec. 795, 798 (BIA 1955).

Based on these well-established principles, the majority concedes that a simple DUI is not a crime involving moral turpitude. In fact, the majority concedes implicitly that an infinite number of successive misdemeanor DUI convictions, so long as they are denominated as simple DUI offenses, would constitute neither a crime of violence nor a crime involving moral turpitude.

The majority contends, however, that the elements of an aggravated DUI under Arizona law, which include a DUI either committed with the knowledge that one's license is suspended or revoked or committed following a prior DUI conviction, are sufficient to transform the offense from a nonturpitudinous crime to an offense of "baseness . . . contrary to accepted moral standards that . . . rises to the level of a crime involving moral turpitude." *Matter of Lopez-Meza, supra*, at 1195. In so doing, the majority concludes that the aggravating factors incorporated under sections 28-697(A) and 28-1383(A) of the Arizona Revised Statutes "establish a culpable mental state adequate to support a finding of moral turpitude." *Id.; see also id.* at 1195 (discussing Arizona case law). Thus, the majority looks to the offender's intent in committing the offense as the basis for characterizing the offense, as well as to some essential characterization of the offense itself, to reach its conclusion that the respondent's convictions are for a crime that involves moral turpitude.

The majority correctly asserts that a conviction for aggravated DUI under Arizona law requires proof that the motorist knew or should have known that his or her license was suspended or revoked. *See State v. Williams*, 698 P.2d 732, 734 (Ariz. 1985) (holding that driving without a license involves a culpable mental state). Nevertheless, the mere element in a statute of intent to commit a crime is *not* dispositive of the question whether a criminal conviction under that statute is for a crime that involves moral turpitude.

The necessary intent to be proved in obtaining a conviction for aggravated DUI under Arizona law is the intent to ignore a state administrative directive. This level of intent may be characterized as a knowing violation of a statutory mandate, on its face. It is a level of intent that is based upon an actor's knowledge of a regulatory obligation and a breach of that obligation. And, it is not a level of intent that supports a finding that the offense committed is one involving moral turpitude.

It is well established that every showing of intent that may be an ele-

ment of a criminal offense is not the same as the "evil intent" that is contemplated for purposes of determining that moral turpitude inheres in a particular offense. The United States Court of Appeals for the Ninth Circuit, the jurisdiction in which this case arises, has made clear that "we must focus on the crime *categorically as defined by the statute*, and not on the specific conduct of [the respondent]." *Rodriguez-Herrera v. INS,* 52 F.3d 238, 240 (9th Cir. 1995) (emphasis added) (citing *Goldeshtein v. INS, supra*, at 647, as finding that the presence of mens rea alone as an element of a conviction does not establish an evil intent for purposes of determining whether a crime involves moral turpitude); *see also Hamdan v. INS*, 98 F.3d 183, 188 (5th Cir. 1996); *Gonzalez-Alvarado v. INS*, 39 F.3d 245, 246 (9th Cir. 1994) (concluding that in deciding whether an alien's conviction defines a crime involving moral turpitude, "we consider the elements or nature of a crime as defined by the relevant statute").

The level of intent necessary to convict the respondent under the Arizona statute for aggravated driving is not an evil intent. Aggravated driving merely requires the offender's knowledge that he is not authorized to drive because his license is restricted. When he drives, knowing that he is not supposed to be driving, he violates the law. Such conduct may be knowing and even reckless, but it is not evil. *See Matter of Fualaau*, 21 I&N Dec. 475, 478 (BIA 1996). By contrast, a finding that a crime involves moral turpitude requires a showing that the criminal statute specifically proscribes either an evil intent or conduct that, by its nature, is vile and depraved, or both. *See Matter of Khourn, supra* (evil intent is inherent in the knowing or willful sale and distribution of controlled substances). There is no basis for a comparable finding here.

That an offense is designated by the state as "aggravated" does not change the character of the violation and does not render the offense one involving moral turpitude for purposes of the immigration laws. In *United States v. Anderson,* 989 F.2d 310, 312 (9th Cir. 1993), the Ninth Circuit rejected the proposition that reliance on state labels was sufficient to establish that a state conviction satisfied a uniform federal definition. The Ninth Circuit's holding comports with longstanding Supreme Court law, recognizing that it would be a fallacy to presume that, in a federal act, Congress would rely upon state labels to characterize particular offenses or give controlling effect to such state classifications. *See United States v. Nardello,* 393 U.S. 286, 293-94 (1969). Thus, the label "aggravated" in the Arizona state statute does not necessarily indicate that the character of the offense of which the respondent has been convicted is one involving moral turpitude.

## B. Intersection of Two Offenses

A strictly regulatory offense, such as driving without a license, is not a crime involving moral turpitude. *See Matter of Abreu-Semino*, 12 I&N

Dec. 775 (BIA 1968) (holding that regulatory offenses are not crimes involving moral turpitude). Yet, despite the fact that both unlawful driving and DUI are regulatory offenses, which can be committed in the absence of an evil intent or conduct that is base, vile, or depraved, the majority seeks to bootstrap the intent requirement attached to the regulatory offense of unlawful driving to create a DUI offense that involves moral turpitude.

Such an approach is inconsistent with established precedent interpreting this section of the Act. As I stated at the outset, moral turpitude cannot be viewed as arising from some "undefined synergism" by which two offenses, which do not involve moral turpitude, somehow combine to create one crime involving moral turpitude. *Matter of Short, supra*, at 139; *see also Hamdan v. INS, supra*, at 188 (holding that a deportability finding cannot be sustained where none of the elements under a criminal statute involves moral turpitude); *United States ex rel. Zaffarano v. Corsi,* 63 F.2d 757, 758 (2d Cir. 1933) (ruling that assault is not a crime involving moral turpitude unless combined with another offense that involves moral turpitude).

For example, in *Matter of Short, supra*, this Board determined that in order for assault to be a crime involving moral turpitude, it had to be combined with another offense that independently involved moral turpitude. We stated unequivocally that two offenses that did not involve moral turpitude cannot be combined to create one offense that involves moral turpitude. *Id.* We reiterated this principle in *Matter of Fualaau, supra,* at 478, where we found that even where an assault offense had as an element a reckless mens rea, such a crime would not necessarily involve moral turpitude. Instead, we noted that a reckless intent must be coupled with another element that involves moral turpitude, such as the infliction of serious bodily injury. *Id.* The majority's flawed approach in this case runs afoul of prior precedent decisions, which address the very same pitfalls in interpreting such hybrid offenses. I cannot, therefore, agree that the respondent's conviction is for a crime involving moral turpitude on this basis alone.


### III. EVALUATION OF THE RECORD


While I do not disagree that the respondent's mental state in committing a crime may be an important factor in determining whether a crime involves moral turpitude, the evidence in this case reflects that the respondent's intent, as reflected in what little we know of his convictions, is too attenuated to indicate the type of conduct that would suggest a level of depravity that reasonably can be associated with moral turpitude. *See Rodriguez-Herrera v. INS, supra.* The offensive conduct complained of by the majority is DUI, whereas the intent requirement relates solely to one's knowledge of having one's driving privileges restricted owing to a previous violation.

In other words, the DUI portion of the Arizona statute still remains a strict liability offense; and driving with a restricted license while under the influence remains an offense that cannot be considered base, vile, or depraved. Thus, the conduct associated with aggravated DUI under Arizona law still remains a regulatory violation. Is such conduct condoned by society? Certainly not. However, that is why the state legislature made it a punishable crime.

Nothing—including their being joined together, or the label "aggravated"—has changed the nature of either of these offenses. The fact that an alien convicted of aggravated DUI under sections 28-697(A) and 28-1383(A) of the Arizona Revised Statutes has driven while under the influence, knowing that he or she was violating another state regulatory restriction, is evidence that he or she has committed a punishable offense. It is not evidence that the crime involved the level of evil intent necessary to establish that the crime was one involving moral turpitude. *See Rodriguez-Herrera v. INS, supra,* at 241 (finding that the bare presence of some degree of evil intent is not enough to convert a crime that is not serious into one of moral turpitude leading to deportation); *see also Matter of Serna, supra*, at 582 (emphasizing that neither the seriousness of a criminal offense nor the severity of the sentence imposed is determinative of whether a crime involves moral turpitude).

On these facts, I cannot find that the respondent's mens rea rises to the level of an evil intent or that the nature of the offense is such that, as a result of being "aggravated," it is somehow transformed to a crime that is base, vile, or depraved. It is well established that an offense must necessarily involve moral turpitude in order for a conviction for that crime to support an order of deportation. *See United States ex rel. Zaffarano v. Corsi, supra; United States ex rel. Robinson v. Day*, 51 F.2d 1022 (2d Cir. 1931); *United States ex rel. Mylius v. Uhl*, 210 F. 860 (2d Cir. 1914); *United States ex rel. Valenti v. Karmuth,* 1 F. Supp. 370 (N.D.N.Y. 1932). It is equally clear that any doubts in deciding such questions must be resolved in the alien's favor. *Fong Haw Tan v. Phelan,* 333 U.S. 6 (1948); *United States ex rel. Giglio v. Neelly,* 208 F.2d 337 (7th Cir. 1953); *Matter of Serna, supra*, at 586; *Matter of Hou*, 20 I&N Dec. 513 (BIA 1992), *superseded on other grounds by* section 203(b) of the Immigration and Nationality Technical Corrections Act of 1994, Pub. L. No. 103-416, 108 Stat. 4305, 4311; *see also Matter of Saint John,* 21 I&N Dec. 593 (BIA 1996). As such, I cannot find that the respondent's conviction involves moral turpitude.

## IV. CONCLUSION

I concur with the majority's conclusion in this case that a conviction for DUI is not a conviction for a crime involving moral turpitude. However, the

majority's analysis pertaining to the respondent's aggravated DUI convictions runs contrary to both Board precedent and binding federal court authority. I disagree with the majority's characterization of the respondent's aggravated DUI convictions and would, instead, find that these crimes do not constitute crimes involving moral turpitude. Consequently, I would dismiss the Service's appeal.