REINHARDT, Circuit Judge,
concurring in part and concurring in the judgment:
I join parts I, II.A, II.B, II.E, and II.F of the majority opinion. I also agree with *1109 most of parts II.C and II.D.[1] write separately in order to explain why I believe that the BIA should hold on remand that Delgado’s DUI convictions were not particularly serious crimes.
It may help to put matters in perspective if I first explain the consequences of determining that a given offense constitutes a particularly serious crime. Not only does such a determination override the universal rule concerning refugees— that an alien who faces persecution or even death will not be returned to the land controlled by his persecutors — but it strips the Attorney General of all discretion to determine whether, considering all the circumstances, the individual who has committed an offense should be permitted to remain in this country. If an alien’s offense is deemed particularly serious, the Attorney General loses his ability to consider a host of relevant discretionary factors: whether the alien has served in our Armed Forces, whether he has been gainfully employed and for how long, whether he has paid his taxes, whether he is the sole support of his American wife and children, and whether any members of his American family are ill or in need of medical care that they would be unable to obtain if he is removed to a foreign land. The “particularly serious crime” determination is thus a total bar to asylum and withholding of removal, regardless of how overwhelming the equities that favor an alien’s remaining with his citizen family in this country. The INA reserves such severe consequences for those criminal offenses that make an alien so “danger[ous] to the community of the United States” that we are not willing to keep him here, notwithstanding the persecution he may face at home. In my opinion, these consequences should not be imposed on the basis of a DUI conviction.
I
As the BIA itself held in Matter of Frentescu, “a ‘particularly serious crime’ is more serious than a serious nonpolitical crime.’” 18 I. & N. Dec. 244, 245 (BIA 1982), superseded on other grounds by statute, 8 U.S.C. § 1258(h) (1991), as recognized in Miguel-Miguel v. Gonzales, 500 F.3d 941, 946 (9th Cir.2007). To state what would be obvious even apart from the BIA’s having said so, a particularly serious crime must be one that is more than serious — one that stands clearly apart from the broader category of “serious” crimes.[2] A list of those crimes that the statutes *1110 make per se “particularly serious” (by virtue of their status as aggravated felonies) gives some indication of the types of offenses that stand apart in their seriousness: “murder, rape, or sexual abuse of a minor,” child pornography offenses, treason, the disclosure of national defense information, or RICO offenses.[3] See 8 U.S.C. § 1101(a)(43) (enumerating aggravated felonies).[4]
The agency’s past precedential decisions also help to illuminate the definition of a “particularly serious crime.” Crimes that the Attorney General has determined to be “particularly serious” as a categorical matter, regardless of the circumstances of an individual conviction, include felony menacing (by threatening with a deadly weapon),[5] armed robbery,[6] and burglary of a dwelling (during which the offender is armed with a deadly weapon or causes injury to another).[7] Common to these crimes is the intentional use or threatened use of force, the implication being that the perpetrator is a violent person.
Driving under the influence has little in common with these sorts of crimes. It has not been specially targeted through federal legislation, nor is it mentioned elsewhere in the immigration laws, nor does it involve violence. See Leocal v. Ashcroft, 543 U.S. 1, 11, 125 S.Ct. 377, 160 L.Ed.2d 271 (2004) (“The ordinary meaning of [‘crime of violence’] ... suggests a category of violent, active crimes that cannot be said naturally to include DUI offenses.”). A DUI, while deemed worthy of punishment, is more a run-of-the-mill offense than a particularly serious one. American voters would be unlikely to elect a president or vice president who had committed a particularly serious crime, yet they had no difficulty in recently electing to each office a candidate with a DUI record. If the BIA is to hold that a DUI conviction qualifies as a particularly serious crime, then it must clearly explain this anomaly.
The BIA should also explain how it can consider a DUI conviction to qualify as a particularly serious crime, when it does not consider even a recidivist DUI offense to be a “crime involving moral turpitude.” Matter of Torres-Varela, 23 I. & N. Dec. 78 (BIA 2001).[8] The BIA’s determination *1111 that this offense is “not necessarily a conviction for a crime involving moral turpitude should lead [it] to exercise great caution in designating such an offense as a particularly serious crime.” Matter of L-S-, 22 I. & N. Dec. 645, 655 (BIA 1999). It is difficult to understand how the BIA could hold that a DUI conviction is a particularly serious crime, sufficient to send an alien home to face persecution and possible death, when it is not even a serious enough offense to render him removable in the first place — when it is neither an aggravated felony, nor a crime involving moral turpitude, nor any other kind of offense for which an alien may be deported.[9]
All the relevant indications — the statute’s text, the purpose of the “particularly serious crime” bar, the BIA’s own past applications of that bar, and common sense — should lead the BIA to hold on remand that a DUI conviction is not a particularly serious crime. I cannot imagine that when Congress added the “particularly serious crime” exception to our immigration law in the Refugee Act of 1980, “to bring United States refugee law into conformance with the 1967 United Nations Protocol Relating to the Status of Refugees,” it envisioned that everyday offenses of this sort could be included within that term. INS v. Cardozar-Fonseca, 480 U.S. 421, 436, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987). I hope that when the BIA considers this question in a fully reasoned manner, it will agree.
II
As the majority notes, one of the three possible readings of the BIA’s cryptic order is that “the BIA may have determined that Delgado’s three convictions, when viewed cumulatively, rise to the level of a particularly serious crime.” Maj. Op. at 1108. Another is that “the BIA may have determined that one of the convictions— presumably the third — rises to the level of a particularly serious crime in light of Delgado’s two earlier convictions.” Id. at 1108. In my view, neither of these interpretations is legally available to the agency.[10]
The statutes provide no conceivable basis for the agency to consider the convictions’ cumulative effect. The bar to relief applies if the Attorney General determines that “the alien, having been convicted by a final judgment of a particularly serious crime, constitutes a danger to the community of the United States.” 8 U.S.C. § 1158(b)(2)(A)(ii) (emphasis added); see id. § 1231(b)(3)(B)(ii) (virtually identical *1112 for withholding of removal). The statutes do not mention “a particularly long rap sheet,” “a particularly egregious repeat offender,” or “a particularly serious series of offenses.” The singular article “a” could not make any clearer the singular nature of “a particularly serious crime”: the agency must identify one offense of conviction that constitutes “a particularly serious crime” in order to relieve the Attorney General of the opportunity to exercise his discretion and to bar the alien’s application for relief.
Indeed, the BIA has recognized as much in the closely related context of crimes involving moral turpitude. In Matter of Torres-Varela, it held “that multiple convictions for the same DUI offense, which individually is not a crime involving moral turpitude, do not, by themselves, aggregate into a conviction for a crime involving moral turpitude.” 23 I. & N. Dec. at 86. “[Njonturpitudinous conduct,” the BIA explained, “is not rendered turpitudinous through multiple convictions for the same offense.” Id. Precisely the same is true here: if one conviction of a given offense does not constitute a particularly serious crime, then the offense does not become particularly serious through the aggregation of several convictions.
The fallacy in a holding that multiple convictions cumulatively amount to “a particularly serious crime” may be readily shown by an analogy. Suppose the chairman of a political party comments that one of its candidates, “having made a particularly offensive remark, constitutes a danger to the electoral fortunes of the party,” and accordingly urges that the candidate be replaced with a different nominee. Anyone fluent in the English language would understand the chairman to have said that (1) among the set of all offensive remarks, there is a sub-class that may be defined as “particularly offensive”; (2) the candidate had made one such remark; and (3) this single act by the candidate threatened the party’s chances of victory in the next election. No one would understand the chairman to have meant that the candidate had made an inappropriate remark on several occasions and that these remarks, taken together, had “risen to the level of being” a particularly offensive remark. It would not matter, under the rule announced by the chairman, whether the candidate had made an offensive remark one, four, or ten times. Unless the remark that caused the chairman to seek the candidate’s replacement were in fact particularly offensive, rather than only offensive, it would not fall under the chairman’s rule.
It would be no less improper for the agency to determine that Delgado’s third DUI conviction was particularly serious only in light of. his two prior DUI convictions. Indeed, such a rationale would amount to the same as treating the three convictions cumulatively as particularly serious. Because the cumulative approach contravenes the statutory text, if the agency were to reason in a manner substantively identical to that approach, its interpretation of the statute would not qualify for deference under the Chevron framework. Although “[t]he BIA’s interpretation of immigration laws is entitled to deference ..., we are not obligated to accept an.interpretation clearly contrary to the plain and sensible meaning of the statute.” Kankamalage v. INS, 335 F.3d 858, 862 (9th Cir.2003); see Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842—43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).
The BIA’s set of criteria for determining whether a given conviction is of a particularly serious crime makes clear that the relevant inquiry is limited to the events relating to that single conviction, not to the broader subject of an immigrant’s history *1113 of criminality in general. “In judging the seriousness of a crime,” the agency “look[s] to such factors as the nature of the conviction, the circumstances and underlying facts of the conviction, the type of sentence imposed, and, most importantly, whether the type and circumstances of the crime indicate that the alien will be a danger to the community.” Frentescu, 18 I. & N. Dec. at 247 (emphasis added). Each of these factors relates solely to the one conviction that the agency is asked to classify as either a particularly serious crime or one that may be serious but not particularly serious. The agency can consider the “circumstances” of that conviction, but the phrase imposes its own limit: the relevant circumstances are those relating to the conviction, not to the alien’s life history, his moral character, or his criminal record. See Matter of Carballe, 19 I. & N. Dec. 357, 360 (BIA 1986) (“The focus [in applying the Frentescu factors] is on the crime that was committed.”).
The circumstances of a DUI conviction might include such factors as the driver’s blood alcohol level, the speed at which he was traveling when arrested, the road conditions at the time, or whether passengers were in the car.[11] But they do not include the driver’s list of past convictions, regardless of what offenses it may include. Whether the driver has a prior DUI conviction is no more relevant than whether he has a prior conviction for murder or rape: none of those prior convictions relates to the seriousness of the particular crime that the agency is required to classify. As the Attorney General has explicitly held, “the fact that an alien has no prior convictions is irrelevant to the ‘particularly serious crime’ calculus.” Matter of Y-L-A-G-, & R-S-R-, 23 I. & N. Dec. 270, 277 (AG 2002), overruled on other grounds by Zheng v. Ashcroft, 332 F.3d 1186 (9th Cir. 2003); see also Matter of N-A-M-, 24 I. & N. Dec. 336, 343 (BIA 2007) (“[Offender characteristics ... do not diminish the gravity of a crime.”). If an alien’s lack of prior convictions is irrelevant to the “particularly serious crime” determination, then as a logical matter, it must equally be irrelevant that an alien does have prior convictions. As the BIA has emphasized, “the proper focus for determining whether a crime is particularly serious is on the nature of the crime and not the likelihood of future serious misconduct.” Id.[12]
In short, two of the three grounds on which the majority suggests that the agency’s conclusion may have been based would violate the statute’s dictates. The third basis is that a single act of drunk driving may have constituted a particularly serious crime. As to this possibility, as I have indicated in part I, I strongly doubt that the “particularly serious crime” provision was intended to encompass a single conviction for drunk driving.
*1114 III
“Drunk driving is a nationwide problem, as evidenced by the efforts of legislatures to prohibit such conduct and impose appropriate penalties. But this fact does not warrant our shoe-horning it into statutory sections where it does not fit.” Leocal, 543 U.S. at 13, 125 S.Ct. 377. Simple drunk driving has no place in a statutory exception limited to crimes so serious that they require the government to deport refugees to face likely persecution without consideration of the merits of their claims. No single conviction for such an offense can constitute a particularly serious crime, and the statute permits neither the aggregation of multiple convictions into a single particularly serious crime nor the determination that a single conviction is particularly serious in light of an alien’s prior convictions.
To hold that Delgado has not committed a particularly serious crime would not necessarily allow him to remain in the country. It would mean only that the agency could hear his claim of persecution; he would still have to prove that he reasonably fears persecution on account of a protected ground upon his return to El Salvador. Even if he were found eligible for asylum, the Attorney General would have the discretion to deny him that relief. Cardoza-Fonseca, 480 U.S. at 428 n. 5, 107 S.Ct. 1207.[13] At that point, the Attorney General could consider Delgado’s criminal record, along with the equities in his favor and his likelihood of future persecution, in determining whether to grant him asylum. See, e.g., Kazlauskas v. INS, 46 F.3d 902, 907 (9th Cir.1995).
In my view, Delgado should have the opportunity to demonstrate his eligibility for relief and for the Attorney General’s exercise of his discretion. I strongly doubt that the agency should pretermit that process by holding that a DUI conviction can condemn an alien to deportation into the hands of his potential persecutors.

. I agree with the holding of each section. With respect to part II.C, I agree "that, for purposes of withholding of removal, an offense need not be an aggravated felony to be a particularly serious crime.” Op. at 1105. I do so even though the statutes provide that certain aggravated felonies per se fall in that category of offenses. With respect to part II.D, I recognize "that the Attorney General has the authority to designate offenses as particularly serious crimes through case-by-case adjudication of individual asylum applications,” Op. at 1106, but believe that this authority applies principally to the categorical classification of offenses as particularly serious, rather than to the classification of individual criminal acts as particularly serious.

. Were I interpreting this statute in the first instance, in light of the provision’s international provenance I would hold that a conviction of a particularly serious crime is necessary but not sufficient to trigger the bar to relief. I would read the statute to say that the Attorney General must separately determine that "the alien ... constitutes a danger to the community of the United States” in order to send him home to face persecution. This interpretation of the statute's plain text, which appears to me to be the most natural one, is most consistent with the intent of the 1951 Refugee Convention and has been adopted by other countries in interpreting identical provisions of their refugee laws, as the amicus brief of the U.N. High Commissioner for Refugees explains. See, e.g., In re Tamayo and Department of Immigration, (1994) 37 A.L.D. 786 (Austl.); Pushpanathan v. Canada (Minister of Citizenship and Immigration), [1998] 1 S.C.R. 982, 999 (Can.); see also Paul Weis, The Refugee Convention, 1951: The Travaux Préparatoires Analyzed with a *1110 Commentary 342 (1995). Our court, the BIA, and every other circuit to consider the issue have rejected that interpretation, however. See Ramirez-Ramos v. INS, 814 F.2d 1394, 1397 (9th Cir.1987); Matter of Carballe, 19 I. & N. Dec. 357 (BIA 1986); see also, e.g., Kofa v. INS, 60 F.3d 1084, 1088 (4th Cir.1995) (en banc).

. For withholding of removal, such offenses are only per se "particularly serious crimes” if the alien was sentenced to at least five years of imprisonment. 8 U.S.C. § 1231(b)(3)(B) (hanging paragraph).

. As I have said, I agree with the majority’s holding that the Attorney General may determine through case-by-case adjudication that crimes other than aggravated felonies are particularly serious. The list nevertheless illustrates the types of crimes that are serious enough to order an individual removed to his homeland to face persecution or death.

. Matter of N-A-M-, 24 I. & N. Dec. 336, 343 (BIA 2007).

. Matter of Carballe, 19 I. & N. Dec. 357, 360-61 (BIA 1986).

. Matter of Garcia-Garrocho, 19 I. & N. Dec. 423, 425-26 (BIA 1986).

. In Matter of Lopez-Meza, 22 I. & N. Dec. 1188 (BIA 1999), the BIA held that a conviction under Arizona’s aggravated DUI statute is a crime involving moral turpitude. That statute makes it a crime to drive under the influence while knowingly driving with a suspended license. See Ariz.Rev.Stat. § 28-1381(A)(1); Marmolejo-Campos v. Holder, 558 F.3d 903, 917 (9th Cir.2009) (en banc). California separately criminalizes DUI and driving with a suspended license, and Delgado has admitted to one conviction of each offense in 2002. But the BIA’s precedents make clear that the two convictions do not merge to become "a” crime involving moral turpitude, akin to a conviction under the Arizona stat *1111 ute. As the BIA has held, ’’[m]oral turpitude cannot be viewed to arise from some undefined synergism by which two offenses are combined to create a crime involving moral turpitude.” Matter of Short, 20 I. & N. Dec. 136, 139 (BIA 1989); see Marmolejo-Campos, 558 F.3d at 918 (Bybee, J., concurring in part and dissenting in part).

. The Immigration and Nationality Act makes only a limited set of other types of criminal offenses grounds for an immigrant’s removal. They include high-speed flight from an immigration checkpoint, INA § 237(a)(2)(A)(iv); failure to register as a sex offender, id. § 237(a)(2)(A)(v); controlled substance offenses, id. § 237(a)(2)(B); fire-arms offenses, id."§ 237(a)(2)(C); national security offenses, id. § 237(a)(2)(D)(i-iii); misuse of travel documentation, id. § 237(a)(2)(D)(iv); importation of an alien for an immoral purpose, id.; domestic violence offenses, id. § 237(a)(2)(E); and trafficking, id. § 237(a)(2)(F). A DUI conviction falls into none of these categories.

. Were I deciding the issue in the first instance, I would hold that the agency may define what crimes are particularly serious only on a categorical offense-by-offense basis, rather than treating individual convictions differently on the basis of their specific facts. Under current law, however, the agency does sometimes look to the individual conviction and its particular characteristics rather than merely to the type of crime. My view is that it should do so only sparingly.

. They might also include whether the driver caused serious harm to any other person, but a DUI that caused such harm would ordinarily be charged not under a simple DUI statute, e.g., Cal. Veh.Code § 23152, but as a more serious crime. See, e.g., Cal.Penal Code § 191.5(b) (defining "[vehicular manslaughter while intoxicated”). Indeed, fatal DUIs may be and often are charged as second-degree murder. Cf. People v. Watson, 30 Cal.3d 290, 179 Cal.Rptr. 43, 637 P.2d 279 (1981). Delgado’s first DUI conviction was under a separate statute for DUI causing bodily injury, Cal. Veh.Code § 23153(a).

. To the extent that the agency's "particularly serious crime” determinations may sometimes have taken into account an alien’s prior criminal history, or lack thereof, its actions can only be regarded as inconsistent with or overruled by the precedents cited above. Compare Matter of L-S-, 22 I. & N. Dec. 645, 656 (BIA 1999) ("The record demonstrates that this was his first offense.”) with Matter of Y-L-, A-G-, & R-S-R-, 23 I. & N. Dec. at 277 ("[T]hat an alien has no prior convictions is irrelevant to the 'particularly serious crime' calculus.”).

. Only if Delgado could demonstrate a clear probability of persecution upon his return would the government be obligated not to deport him. See INS v. Stevic, 467 U.S. 407, 424, 104 S.Ct. 2489, 81 L.Ed.2d 321 (1984).