Filed 4/8/15  P. v. Moran CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>v.<br><br>JESLEY AUDLEY MORAN,<br><br>      Defendant and Appellant. | B255289<br><br>(Los Angeles County<br>Super. Ct. No. VA123942) |

APPEAL from a judgment of the Superior Court for the County of Los Angeles. Raul A. Sahagun, Judge.  Affirmed.

Christopher Love, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Shawn McGahey Webb and Nathan Guttman, Deputy Attorneys General, for Plaintiff and Respondent.

_____

## SUMMARY

On July 18, 2011, a fatal collision occurred after defendant Jesley Audley Moran left her stalled truck in the number two lane of a freeway in the middle of the night without activating emergency lights. A jury convicted defendant of vehicular manslaughter with gross negligence, and also found an allegation that defendant "fled the scene of the accident after committing the . . . offense, within the meaning of Vehicle Code Section 20001[, subdivision] (c)" to be true. That statute requires imposition of a five-year sentencing enhancement on "[a] person who flees the scene of the crime after committing" vehicular manslaughter with gross negligence.

On appeal, defendant contends the jury's true finding on the sentencing allegation was legally inadequate, because the jury found that defendant fled "the scene of the accident" rather than "the scene of the crime." She also contends that, as a matter of law, she was never at "the scene of the crime" because she had already walked 100 yards away from the scene when she heard the crash behind her. (She continued walking away and eventually some motorists picked her up and drove her home.)

Because defendant's claims have no basis in law or reason, we affirm the judgment.

## FACTS

On the evening of July 17, 2011, defendant and her boyfriend went to a party at a nightclub.[1] At about 10:30 p.m., after an argument with defendant, her boyfriend went home. Defendant arrived at her boyfriend's home at about 2:00 a.m., and after they talked, defendant was upset. She drove off in a big Ford flatbed stake truck that belonged either to her or to her boyfriend, and that had been parked outside his apartment.

---

[1] The respondent's brief and various minute orders refer to defendant's boyfriend as "Jairo Arias," and at the trial he was sometimes directly addressed during questioning as "Mr. Arias." When he was sworn as a witness, however, defendant's boyfriend identified himself as "Jairo Antonio Alvarado" and that is how the interpreter spelled his name after the witness stated it. To avoid confusion, we will refer to him only as defendant's boyfriend.

After driving along surface streets and onto the eastbound 105 freeway, defendant entered the northbound 710 freeway. She was driving 60 to 65 miles an hour approaching Imperial Highway when the truck became disabled and she veered to the right shoulder. After a few attempts, she was able to restart the truck, and again drove north on the freeway. A few minutes later, the truck became disabled a second time. Defendant later told a California Highway Patrol (CHP) officer that when the truck became disabled the second time, she again veered to the right shoulder, activated the four-way emergency lights, got out of the truck, and began to walk northbound on the right shoulder.

Meanwhile, Rose Ochoa was driving north on the 710 freeway with three friends (Elizabeth Aguilar, Cesar Vital, and Blanca Hernandez) as passengers. They were returning from the beach after observing a grunion run. It was dark, traffic was light, the weather was dry, and Ms. Ochoa was driving around 60 miles an hour. She was driving in the number two lane from the center divider, north of the Imperial Highway off-ramp and "right before . . . the Firestone exit," when she "saw the vehicle there"; "it was a blink of an eye, and I didn't have enough time to stop." She was about 30 feet or so away when she first saw the vehicle, which was in the number two lane and "look[ed] like . . . a big UPS truck from behind, without its lights on. It looked really dark."

Ms. Ochoa steered to the left, "thinking I'd avoided it, but I didn't, until the impact on the right-hand side, back passenger." Then Ms. Ochoa drove "over to the far right lane to avoid anything else," and when she was on the right hand shoulder she smelled smoke and turned off the car. Her car was then about 500 feet from the debris field caused by the collision.

Blanca Hernandez, who was seated in the rear passenger-side seat of Ms. Ochoa's car, suffered fatal head injuries.

After Ms. Ochoa's car collided with defendant's truck, two or three other vehicles also collided with the truck. Officer Matthew Beaupre described the roadway in the area of the accident this way: "As you're passing Imperial, it's a sweeping right, uphanded curve in the roadway, and then just prior to this collision, it plateaus out, and then it starts

3

sweeping downward and curving away, leaves a blind spot where the collision actually occurred."

Officer Beaupre and Officer Joshua McKernan were in the first patrol car to arrive at the scene. When they arrived, just after all the collisions had occurred, they found defendant's truck partly in the center median area and partly in the number one lane. Officer McKernan later opined that the truck was in the number two lane when Ms. Ochoa's car collided with it.

Later on the morning of the accident, defendant and her boyfriend went to the CHP's East Los Angeles office. They were interviewed separately by Officer Ramiro Durazo.

Defendant's boyfriend told Officer Durazo that earlier that morning, he met defendant at her house and told her "they need to come in to report the accident or he would report the truck stolen." (He said defendant had called him at 2:42 a.m. and told him that the truck broke down and was involved in an accident. When defendant called him, she was by the Firestone Boulevard off ramp trying to get a ride home.) Defendant's boyfriend said he owned the truck, and it had mechanical issues. While he was at the nightclub with defendant, he saw her consume four to five Bud Light beers.

As already mentioned, defendant told Officer Durazo that, when the truck became disabled for the second time, she veered over to the right shoulder and came to a stop, activated the emergency lights, got out and began to walk northbound on the right shoulder. When she was about 100 yards away from the truck, she heard a crash behind her. She did not see the accident. She continued to walk northbound, until two men in a red vehicle stopped to assist her and drove her home. When Officer Durazo asked defendant why she did not remain with the truck that stalled out, defendant said "she was afraid because she is unlicensed, and she is aware she should not be driving." During the interview, Officer Durazo smelled the odor of an alcoholic beverage; defendant consented to a breath sample, and the reading showed no alcohol present. Defendant told Officer Durazo that she drank four Bud Light beers between 7:00 p.m. and the time she left the club.

4

Defendant was charged by information with vehicular manslaughter with gross negligence (count 1; Pen. Code, § 192, subd. (c)(1)), leaving the scene of an accident (count 2; Veh. Code, § 20001, subd. (a)), and driving without a license (count 3; Veh. Code, § 12500, subd. (a)). The information also alleged, as to the vehicular manslaughter charge, that after committing the offense, defendant fled the scene of the crime. (Veh. Code, § 20001, subd. (c).) The charge in count 2 (leaving the scene of an accident) was dismissed before trial.

At the trial, evidence was adduced establishing the facts described above. In addition, there was testimony from truck driver William Vickars, who was driving the tractor of his semi-truck in the slow lane, and saw defendant's truck stopped in the number two or number three lane. Mr. Vickars described the truck as a stake bed truck, and "[i]t was just black. Seemed like everything was blacked out, no lights or anything." This was apparently just after Ms. Ochoa's car collided with the truck, because Mr. Vickars also saw a vehicle or two and some people standing by the vehicle about a quarter mile further along. He called 911.

Ruben Hernandez, a civilian employed by the CHP with expertise in inspecting and analyzing motor vehicles following serious collisions, also testified. He examined defendant's truck after the accident, and found the truck had a quarter tank of fuel. He had no difficulty starting the vehicle, "after about four revolutions of the engine turning repeatedly"; he started and stopped the truck four times, each time letting the engine run for about 15 seconds. Mr. Hernandez was able to illuminate various of the vehicle's headlamps and brake lamps; others were damaged in the collision. He found that the hazard warning lamps "illuminate[d] to a bright candlepower, but they did not flash."

Defendant testified in her defense. She said that she did not have anything to drink during the evening before the accident. She testified that the truck stalled only one time, not twice. Fumes were coming from under the engine, and the truck "turned off by itself," so she pulled over. She stayed inside the car for five minutes, and stood on the side of the road waving, to see if someone would stop, for 15 or 20 minutes. She put on the emergency lights, and they worked. She did not leave the truck in the number one or

5

number two lane; she left it in lane number four, because there was a barrier preventing her from getting closer to the shoulder. She walked north to the Firestone exit, and never heard a car crash. Defendant testified she did not know there had been an accident until her boyfriend arrived at her home at 6:00 a.m. that day.

The jury found defendant guilty of vehicular manslaughter with gross negligence, also finding she committed the infractions of leaving a vehicle on a freeway (Veh. Code, § 21718) and failing to activate emergency flashing lights (§ 25251, subd. (b).) The jury found true the allegation that defendant "fled the scene of the accident after committing the above offense, within the meaning of . . . Section 20001(c)," and also found defendant guilty of driving without a license.

The court sentenced defendant to the low term of two years on the vehicular manslaughter charge, plus a mandatory term of five years for fleeing the scene of the crime after committing the offense, and made other orders not at issue in this appeal.

## DISCUSSION

Defendant contends her due process rights were violated because the trial court erroneously instructed the jury, using CALCRIM No. 2160, to decide whether defendant "fled the scene of *the accident* after committing vehicular manslaughter," instead of whether defendant "fled the scene of *the crime*" after committing vehicular manslaughter.[2] (Italics added.) This was error, defendant tells us, because the statute

---

[2] The trial court instructed the jury: "If you find the defendant guilty of vehicular manslaughter as a felony under Count 1, you must then decide whether the People have proved the additional allegation that the defendant fled the scene of the accident after committing vehicular manslaughter in violation of Vehicle Code section 20001(c). [¶] To prove this allegation, the People must prove that: [¶] 1. The defendant knew that she had been involved in an accident that injured another person or knew from the nature of the accident that it was probable that another person had been injured; [¶] AND [¶] 2. The defendant willfully fled the scene of the accident. [¶] Someone commits an act willfully when he or she does it willingly or on purpose. It is not required that he or she intend to break the law, hurt someone else, or gain any advantage. [¶] To be involved in an accident means to be connected with the accident in a natural or logical manner. It is not necessary for the driver's vehicle to collide with another vehicle or person. [¶] The

6

uses the word "crime" rather than "accident,"[3] and the verdict form, which also used the word "accident," compounded the error.  The contention is manifestly without merit.

First, defendant did not object to the instruction or the verdict form, and therefore forfeited the claim.

Second, there was good reason for the lack of objection, as the instruction was correct.  There is no difference, legal or otherwise, between "the scene of the accident" and "the scene of the crime" when a defendant has been convicted of vehicular manslaughter.  Defendant offers no basis in reason or pertinent legal authority for her contention, and there is none.  Defendant intimates, incorrectly, that the court in *People v. Vela* (2012) 205 Cal.App.4th 942 recommended that CALCRIM No. 2160 be modified to change the word "accident" to "crime."  That is not so.  *Vela* recommended a different modification entirely:  "We recommend that the Judicial Council modify CALCRIM No. 2160 by deleting the reference to failing to immediately stop at the scene and substituting the actus reus element intended by the Legislature – fleeing the scene." (*Vela*, at p. 951, fn. 7.)  The Judicial Council did just that, and the trial court here gave the instruction as modified to delete the wording at issue in *Vela*.  Further, the court instructed the jury to consider the allegation *if* it found defendant guilty of felony vehicular manslaughter.  The verdict form shows the jury did so, and then found the defendant "fled the scene of the accident after committing the above offense . . . ."  The

People have the burden of proving this allegation beyond a reasonable doubt.  If the People have not met this burden, you must find that this allegation has not been proved."

[3]     Vehicle Code section 20001, subdivision (c) provides:  "A person who flees the scene of the crime after committing a violation of Section 191.5 of, or paragraph (1) of subdivision (c) of Section 192 of the Penal Code, upon conviction of any of those sections, in addition and consecutive to the punishment prescribed, shall be punished by an additional term of imprisonment of five years in the state prison.  This additional term shall not be imposed unless the allegation is charged in the accusatory pleading and admitted by the defendant or found to be true by the trier of fact.  The court shall not strike a finding that brings a person within the provisions of this subdivision or an allegation made pursuant to this subdivision."

7

scene of the accident and the scene of the crime are necessarily one and the same. There was no error in the instruction as given.

Defendant also contends that, as a matter of law, she was no longer at "the scene of the crime" when the accident occurred, because she had already walked 100 yards away from the truck when she heard the crash. Therefore, she asserts, her sentence for fleeing the scene was unauthorized. This, too, is a contrived argument that has no merit.

The question whether defendant fled the scene of the crime is a question of fact for the jury, not a question of law. Defendant cites no authority requiring the defendant to be "in the immediate presence of the injured or deceased victim" or "physically at the crash site" at the time of the collision and flight. Defendant says such a requirement is "inferable" from cases where those happen to be the facts, but of course that is not so. Cases are not authority for propositions not considered, and in this case, the proposition is irrational and without any support in law.

The only question presented in a case like this is whether substantial evidence supported the jury's finding that defendant fled the scene of the accident, and it most certainly did. The evidence showed defendant heard the crash, and kept on walking, accepting a ride with two motorists who picked her up and drove her home – all after she must have known that someone had collided with her truck at high speed on a freeway. When Officer Durazo asked her "why she didn't remain with the truck that stalled out," defendant said "she was afraid because she is unlicensed, and she is aware she should not be driving." All this is substantial evidence defendant fled the scene, and the assertion that the statute requires immediate proximity to the fatal accident at the time of flight is insupportable.

## DISPOSITION

The judgment is affirmed.

GRIMES, J.

We concur:


RUBIN, Acting, P. J.          FLIER, J.

8