[No. C066404. Third Dist. Apr. 30, 2012.]

THE PEOPLE, Plaintiff and Respondent, v.
REBECCA VELA, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

\*Pursuant to California Rules of Court, rules 8.1110 and 8.1105(b), this opinion is certified for publication with the exception of parts I. and II.A. of the Discussion.

**COUNSEL**

Patricia L. Brisbois, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Julie A. Hokans and J. Robert Jibson, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**MURRAY, J.**—In a court trial following her waiver of jury trial, defendant Rebecca Vela was convicted of second degree murder (Pen. Code, §§ 187, subd. (a), 189; count one), gross vehicular manslaughter while intoxicated

(Pen. Code, § 191.5, subd. (a); count two), and driving under the influence of alcohol causing bodily injury (Veh. Code, § 23153, subd. (a); count three). As to count three, the court found that defendant had suffered four prior convictions of driving under the influence. (Veh. Code, §§ 23152, subd. (a), 23550.) The court also found defendant guilty of a violation of Vehicle Code section 20001, subdivision (c), which was charged in the information as failing to provide information and rendering assistance at an accident scene. Defendant was sentenced to state prison for 15 years to life on count one, second degree murder. The remaining counts and enhancements were stayed pursuant to Penal Code section 654.

Defendant contends, and the Attorney General concedes, that the conviction on count three, driving under the influence of alcohol causing bodily injury, must be vacated because it is a lesser included offense of count two, gross vehicular manslaughter while intoxicated. Both parties also agree that the great bodily injury allegation charged in connection with count three should be stricken. The parties further agree that, at the least, the abstract of judgment must be modified to list the violation of Vehicle Code section 20001, subdivision (c) not as a separate count, but as an enhancement to count two, although defendant claims there was insufficient evidence to support the count two enhancement.

In the unpublished portion of this opinion, we agree that defendant's conviction of count three, driving under the influence of alcohol causing bodily injury, must be vacated and the associated great bodily injury enhancement must be stricken. We also agree that the conviction on count four should be vacated and the judgment should be modified to reflect sentencing as an enhancement to count two, violation of Vehicle Code section 20001, subdivision (c), fleeing the scene after committing gross vehicular manslaughter while intoxicated.

In the published portion of this opinion, we construe the statutory language of Vehicle Code section 20001, subdivision (c), and conclude that the evidence is sufficient to support a true finding on that enhancement.

We modify the judgment accordingly and otherwise affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### The Prosecution's Case

On April 18, 2009, around 10:30 p.m., Tina Nunez and her daughter were traveling on East Stockton Boulevard in Elk Grove. Nunez saw a black Acura turn onto East Stockton Boulevard from a cross street and travel ahead of her

on the "wrong side of the road," i.e., on the opposite side of the yellow dividing line. Nunez was driving 40 to 45 miles per hour. The Acura was traveling faster and moving away from Nunez. When the Acura was two to three blocks ahead of Nunez, she saw it move into the correct lane and then lost sight of it. Seconds later, Nunez saw bright lights ahead of her. As she continued in that direction, Nunez noticed debris on the roadway. Seeing that the Acura had crashed into a sound wall, Nunez pulled over and unsuccessfully tried to telephone 911.

After trying to make the call, Nunez left her car to see if the person in the Acura needed help. Defendant was alone in the Acura and seated in the driver's seat. Defendant said she was okay. Nunez told defendant to stay in her seat and asked if defendant wanted her to call anyone; defendant said no. Defendant stepped out of the driver's side door. As defendant stood there, she appeared dazed and confused. Nunez observed that defendant was "kind of leaving a little bit," but Nunez was not sure where defendant could go since there were so many people there. Nunez asked defendant to stay and asked other people to stop defendant.

Lance McDaniel, an off-duty Elk Grove police officer, drove by and saw what appeared to be an accident scene. A tree had been knocked down and dust was still settling. McDaniel left his car, walked toward the downed tree, and observed motorcycle parts and the deceased victim, Stanley Spaeth, entangled in the tree. McDaniel called 911 and reported the accident and apparent fatality.

Officer McDaniel observed the Acura crashed "through" a sound wall and assumed there had been a vehicle-versus-motorcycle collision. Officer McDaniel noticed defendant walk away from the driver's side of the Acura, around the rear of the Acura, and then in an easterly direction down Teresa Way. Defendant's path was in the opposite direction of the victim and away from her vehicle. Officer McDaniel observed that defendant walked "briskly" as she proceeded eastbound on Teresa. He ran after her, but lost sight of her for a brief moment after she turned a corner. He then observed defendant cross the street diagonally and walk southbound down another street. Officer McDaniel called out to defendant and eventually caught up with her between 30 to 45 yards away from the Acura.

Officer McDaniel asked if she had been driving the Acura and she said yes. He then asked her if there was anyone else in the Acura and she said no. Officer McDaniel, who was not in uniform, identified himself as a police officer and asked defendant for her driver's license. She said, "it's okay. I have it under control," and told McDaniel her identification was in her Acura. Defendant appeared to be intoxicated. She was unsteady, had bloodshot and

watery eyes, slurred her speech, and smelled of alcohol. McDaniel also observed that defendant was coherent, but disoriented, and "definitely nervous."

By this point, Officer McDaniel heard sirens and realized that other officers were responding to the scene. He asked defendant to return with him to the scene. Defendant took a step backward, then turned away from Officer McDaniel and started to walk away. Because he suspected that defendant had been involved in the collision, and because the direction defendant was walking would have made it difficult for the responding officers to find them, Officer McDaniel grabbed defendant's arm and forcibly pulled her back to an area where responding officers could see them. After one police car responding to the scene passed them, Officer McDaniel yelled out at a second police car to get it to stop. McDaniel turned defendant over to the driver of that car, Officer Joaquin Farinha. Farinha then placed defendant in his patrol car. When Officer Farinha asked defendant if she was okay, defendant replied that she was, but then added, "but I wasn't driving."

Officer Farinha then contacted Nunez, who described what she had seen just prior to the collision. Nunez told Farinha she had been traveling 40 to 45 miles per hour and estimated that defendant was going 30 to 35 miles per hour faster. Nunez added that defendant had started to walk away from the scene and Nunez told her to "stay put." Defendant continued to walk away.

Officer Casey Robinson contacted defendant while she was in the rear of Officer Farinha's patrol car. Defendant had the Acura keys in her possession, and Officer Robinson took them from her.

Officer Robinson administered field sobriety tests to defendant. He concluded that defendant was under the influence of alcohol. The parties stipulated that a later blood test showed defendant's blood-alcohol level to be 0.21 percent.

Officer Tina Durham interviewed defendant at the police station. Throughout the interview, defendant denied driving her Acura and claimed her cousin's son, whose name she did not know, had been the driver.

The Acura's windshield was broken inward. Glass debris was on the passenger seat and rear seats but not the driver's seat. Defendant had abrasions and some blood on her face. She also had a seat belt injury that ran from her "upper left [chest] down toward[] her right lower area."

An accident reconstruction expert opined that the victim had been riding his motorcycle northbound on East Stockton Boulevard when the Acura

approached from behind and struck the motorcycle, throwing the victim off the seat onto the hood of the Acura and into the windshield. The victim was then thrown to the ground and came to rest in the area of the tree. The motorcycle was knocked onto its side and under the Acura's right front wheel, causing the Acura to veer into the tree and then into the sound wall. The expert calculated that the Acura's speed was in the area of 70 miles per hour. The victim died at the scene.

Defendant previously had completed classes for persons with multiple convictions for driving under the influence. The classes included the effects of alcohol on a person's ability to drive and the consequences of driving under the influence.

## The Defense Case

Defendant's second cousin, Matthew Vela,[1] testified that he and defendant attended a family barbecue the day of the collision. Vela was 17 years old at the time. The adults at the party were drinking alcoholic beverages. At defendant's request, Matthew drove defendant in her Acura to "see the neighborhood." She seemed okay, although he assumed she had been drinking and "she was aware enough to give [Matthew] the keys to her car." They stopped at a gas station and defendant bought a bottle of wine. They then went to the home of one of Matthew's friends to watch a fight on a pay-per-view channel, which lasted an hour to an hour and a half. While they were at Matthew's friend's house, defendant drank some wine. Following the fight, defendant told Matthew she wanted to go home. Matthew stopped at another gas station and went inside to make a telephone call. When he returned, defendant and the Acura were gone. When Matthew's father picked him up 15 to 20 minutes later, he told Matthew that defendant had been in a car crash and had hit somebody.

Defendant testified that she consumed five or six beers and several shots of sweet liqueur while at the barbecue. She recalled getting into the Acura with Matthew but recalled nothing further until she woke up in jail the next day. She did not recall the collision or speaking to police. She telephoned her mother and was told that someone had died in the accident. She admitted having previously been convicted of driving under the influence and attending alcohol education classes. She knew drinking and driving could result in death. She could not explain why, during the police interview, she had denied driving her Acura at the time of the collision.

---

[1] We refer to Matthew Vela as "Matthew" to distinguish his name from defendant's.

## DISCUSSION

### I.   Conviction for Lesser Included Offense*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### II.   Fleeing the Scene Enhancement Allegation

#### A.   Enhancement—Not a Crime*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

#### B.   Construction of Enhancement Statute and Sufficiency of the Evidence

Defendant contends that the Vehicle Code section 20001, subdivision (c) enhancement is not supported by sufficient evidence that she "fail[ed] to immediately stop her vehicle following the accident." In defendant's view, "[s]he did stop; she hit a wall." She acknowledges that, after hitting the wall and stopping, she started to walk away from the accident scene and Officer McDaniel had to detain her. However, she claims this evidence is insufficient because "she was stopped before she actually left the scene on foot." We are not persuaded.

█   "[Vehicle Code s]ection 20001 addresses two types of penalties for leaving the scene of a vehicular accident; one is a substantive offense and the other is an enhancement for [gross] vehicular manslaughter [while intoxicated]. Subdivisions (a) and (b) of section 20001 proscribe a substantive offense often referred to as felony hit and run. The driver of a vehicle involved in an accident resulting in injury or death to another person 'shall immediately *stop* the vehicle at the scene of the accident' and shall fulfill certain specified duties pertaining to identification, reporting, and rendering aid. [Citation.] The failure to do so constitutes a crime, with the sentencing options dependent upon the extent of the injury inflicted during the accident. [Citation.]" (*People v. Nordberg* (2010) 189 Cal.App.4th 1228, 1236–1237 [117 Cal.Rptr.3d 558], italics added (*Nordberg*).) Defendant was *not* charged with that substantive offense. Defendant was charged with "a conceptually related sentence enhancement allegation" specified under subdivision (c) of Vehicle Code section 20001. (*Nordberg, supra,* at p. 1237.) Subdivision (c) enhances the sentence for gross vehicular manslaughter while intoxicated for

---

*See footnote, *ante,* page 942.

anyone " 'who flees the scene of the crime after committing' " that crime. (*Nordberg, supra*, at p. 1237.)

█ Defendant relies on CALCRIM No. 2160 as the basis of her argument. The actus reus element of CALCRIM No. 2160 is: "The defendant willfully failed to immediately stop at the scene of the accident."[6] The instruction is legally inaccurate. Only the substantive offense under subdivisions (a) and (b) of Vehicle Code section 20001 requires the driver to immediately stop and then perform other duties after stopping. The "proscribed conduct" for the enhancement under Vehicle Code section 20001, subdivision (c) is "fleeing the scene of the crime." (*People v. Calhoun* (2007) 40 Cal.4th 398, 403, 404 [53 Cal.Rptr.3d 539, 150 P.3d 220] (*Calhoun*) [participant in a drag race committed gross vehicular manslaughter by aiding and abetting and then personally fleeing the scene of the crime, "thus satisfying both elements of the enhancement"].)

As our high court observed in *Calhoun*, this enhancement "was enacted in memory of 15-year-old Courtney Cheney, killed by a recidivist drunk driver who fled the scene. [Citations.] The Senate committee report pointed out that the enhancement was necessary 'because when a person who is DUI flees the scene of an accident where a death has occurred and they are not caught immediately, it is hard if not impossible to later prove that they were DUI. This [enhancement] will create an added deterrence to keep people from fleeing accidents where a death may have occurred.' " (*Calhoun, supra*, 40 Cal.4th at p. 404.) Thus, unlike the substantive crime in subdivisions (a) and (b) of Vehicle Code section 20001, the purpose and gravamen of the enhancement is not to compel motorists to stop, provide identification information and render assistance; it is to preserve evidence of a DUI and to act as a deterrent.

---

[6] CALCRIM No. 2160 provides:

"If you find the defendant guilty of vehicular manslaughter [as a felony] [under Count ___], you must then decide whether the People have proved the additional allegation that the defendant fled the scene of the accident after committing vehicular manslaughter [in violation of Vehicle Code section 20001(c)]. [¶] To prove this allegation, the People must prove that: [¶] 1. The defendant knew that (he/she) had been involved in an accident that injured another person [or knew from the nature of the accident that it was probable that another person had been injured]; [¶] AND [¶] 2. *The defendant willfully failed to immediately stop at the scene of the accident.* [¶] Someone commits an act *willfully* when he or she does it willingly or on purpose. It is not required that he or she intend to break the law, hurt someone else, or gain any advantage. [¶] *The duty to immediately stop means that the driver must stop his or her vehicle as soon as reasonably possible under the circumstances.* [¶] [To be *involved in an accident* means to be connected with the accident in a natural or logical manner. It is not necessary for the driver's vehicle to collide with another vehicle or person.] [¶] The People have the burden of proving this allegation beyond a reasonable doubt. If the People have not met this burden, you must find that this allegation has not been proved." (Some italics added.)

Here, if it were not for the timely intervention of Officer McDaniel, defendant could have escaped detection and remained in hiding until her level of intoxication could no longer reliably be determined. This potential loss of evidence is precisely what the statute is intended to deter. (*Calhoun, supra*, 40 Cal.4th at p. 404.)

Moreover, defendant's interpretation of the statute produces absurd results. First, an intoxicated motorist endangers the public in direct proportion to his or her speed and impairment of driving ability. Thus, the greater the impairment and speed, the greater the danger to the public. Increasing along with that danger is the probability that a collision will disable the motorist's vehicle, as happened here. By exempting drivers who disable their vehicles and flee by alternate means, defendant's argument perversely weds heightened danger to a heightened likelihood of eluding enhanced punishment. Second, under defendant's interpretation of the statute, there would be no requirement that a person who stops at the scene thereafter remain at the scene whether or not the vehicle s/he had been driving was disabled. Thus, a person could escape enhanced punishment by "immediately stopping" at the scene but then leaving before law enforcement arrives. The Legislature could not have intended these absurdities. (See, e.g., *People v. Moore* (2011) 51 Cal.4th 1104, 1122 [127 Cal.Rptr.3d 2, 253 P.3d 1153].)[7]

■ Moreover, we conclude that the manner of flight—whether it be on foot, in the vehicle the defendant had been driving, or by some other means—is of no consequence. A person who willfully flees the scene by *any* method after committing gross vehicular manslaughter is subject to the enhanced penalty in Vehicle Code section 20001, subdivision (c).

■ It is true that defendant here did not reach a place where she was undetected; she was in the process of fleeing when apprehended. But the statute does not require that the person escape detection or completely avoid apprehension. The enhanced penalty applies to those "who flee[] the scene." In construing the words of a statute we give them their usual and ordinary meaning. (*People v. Trevino* (2001) 26 Cal.4th 237, 240–241 [109 Cal.Rptr.2d 567, 27 P.3d 283].) The ordinary meaning of "flee" applicable here includes: "to run away from . . . : hasten off"; "to hurry toward a source of security or protection"; "to run away from: endeavor to avoid (as a threatened danger) or escape from"; "to leave abruptly: depart from suddenly or unexpectedly." (Webster's 3d New Internat. Dict. (1961) p. 868, col. 2.)

---

[7] We recommend that the Judicial Council modify CALCRIM No. 2160 by deleting the reference to failing to immediately stop at the scene and substituting the actus reus element intended by the Legislature—fleeing the scene.

Having construed the relevant statute, we next consider whether there was sufficient evidence that defendant fled following the vehicular manslaughter. We conclude there was.

"On appeal, the test of legal sufficiency is whether there is substantial evidence, i.e., evidence from which a reasonable trier of fact could conclude that the prosecution sustained its burden of proof beyond a reasonable doubt. [Citations.] Evidence meeting this standard satisfies constitutional due process and reliability concerns. [Citations.] [¶] While the appellate court must determine that the supporting evidence is reasonable, inherently credible, and of solid value, the court must review the evidence in the light most favorable to the [judgment], and must presume every fact the [trier] could reasonably have deduced from the evidence. [Citations.] Issues of witness credibility are for the [trier of fact]. [Citations.]" (*People v. Boyer* (2006) 38 Cal.4th 412, 479–480 [42 Cal.Rptr.3d 677, 133 P.3d 581].)

■ Although defendant was not *running away*, she was observed *walking* "*briskly*" *away from* the scene. Defendant left the street where the collision occurred, walking in the opposite direction of the victim; she then turned the corner to walk eastbound on one street and then southbound on another. Officer McDaniel had to run to catch up with her. He caught up to her some 30 to 45 yards away from her vehicle, and even farther away from the victim. Officer McDaniel confronted defendant and obtained an admission that defendant was driving and the only occupant of the Acura. He then identified himself as a police officer. When police sirens could be heard and the officer asked her to come back to the scene, defendant backed up and turned to walk away from the officer. Officer McDaniel had to forcibly bring her back to the scene. The trier of fact was entitled to credit the officer's testimony. The Vehicle Code section 20001, subdivision (c) enhancement is supported by substantial evidence.

## DISPOSITION

The trial court is directed to vacate defendant's conviction on count three and to strike the associated great bodily injury allegation. The trial court is further directed to vacate defendant's conviction on count four and to instead reflect an enhancement under Vehicle Code section 20001, subdivision (c) to the sentence imposed on count two, gross vehicular manslaughter while intoxicated. The trial court is directed to prepare an amended abstract of

judgment that includes the charges and enhancements as set forth in this opinion, and to forward a certified copy of the amended abstract to the Department of Corrections and Rehabilitation. In all other respects, the judgment is affirmed.

Blease, Acting P. J., and Hull, J., concurred.

Appellant's petition for review by the Supreme Court was denied July 18, 2012, S202926.