# Matter of Nasir Ali KHAN, Respondent

*Decided November 1, 2024*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

(1) When the government must prove the elements of a sentencing enhancement beyond a reasonable doubt, those additional elements are combined with the elements of the underlying criminal statute and all the elements are then considered together as one compound crime.

(2) The respondent's compound conviction under section 191.5(b) of the California Penal Code enhanced by section 20001(c) of the California Vehicle Code is categorically for a crime involving moral turpitude.

FOR THE RESPONDENT: Zachary M. Nightingale, Esquire, San Francisco, California

FOR THE DEPARTMENT OF HOMELAND SECURITY: Jennifer L. Castro Chavez, Assistant Chief Counsel

BEFORE: Board Panel: GOODWIN and GORMAN, Appellate Immigration Judges. Dissenting Opinion: SÁENZ, Appellate Immigration Judge.

GORMAN, Appellate Immigration Judge:

This matter was last before the Board in 2017 when we concluded that the respondent was not removable as charged and remanded the record for the Immigration Judge to consider the Department of Homeland Security's ("DHS") newly lodged allegations.[1] In doing so, we deferred review of the Immigration Judge's decision denying cancellation of removal under section 240A(a) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1229b(a) (2012).

In a decision dated February 14, 2019, the Immigration Judge found that the respondent's 2009 conviction for gross vehicular manslaughter while intoxicated under section 191.5(b) of the California Penal Code, with a sentencing enhancement for fleeing the scene of an accident under section 20001(c) of the California Vehicle Code, is for a crime involving moral turpitude rendering him removable under section 237(a)(2)(A)(i) of the INA,

---

[1] On September 8, 2017, we denied DHS' motion to reconsider our April 26, 2017, decision, concluding that the respondent's conviction for failure to stop at the scene of an accident involving injury under section 20001(a) of the California Vehicle Code was not for a crime involving moral turpitude.

8 U.S.C. § 1227(a)(2)(A)(i) (2018).[2]  The Immigration Judge also concluded that the respondent was ineligible for a waiver of inadmissibility under section 212(h) of the INA, 8 U.S.C. § 1182(h) (2018).  The respondent has appealed that decision, and DHS has filed a brief opposing the appeal.[3]  The respondent's appeal will be dismissed.

## I. REMOVABILITY

On March 22, 2008, the respondent was driving while intoxicated with his minor son in the car.  *People v. Khan*, No. A124565, 2010 WL 1490050, *1–2, 6 n.1 (Cal. Ct. App. Apr. 14, 2010).  While speeding and driving aggressively, he hit a pedestrian, who was killed in the collision.  *Id.*  The respondent fled the scene of the accident.  *Id.* at *1–2.  On January 20, 2009, a California jury found the respondent guilty on three counts.  One count consisted of violating a base offense with a sentencing enhancement—vehicular manslaughter while intoxicated with ordinary negligence under section 191.5(b) of the California Penal Code as enhanced by section 20001(c) of the California Vehicle Code for fleeing the scene.  A separate count included leaving the scene of an injury accident in violation

---

[2]  On remand, the Immigration Judge also reconsidered whether the respondent's conviction under section 20001(a) of the California Vehicle Code constitutes a crime involving moral turpitude based on the United States Court of Appeals for the Ninth Circuit's intervening case law in *Conejo Bravo v. Sessions*, 875 F.3d 890 (9th Cir. 2017).  We disagree with the Immigration Judge's conclusion that the respondent is removable based on this conviction.  The Ninth Circuit has held that section 20001(a) is not categorically a crime involving moral turpitude but "is divisible into several crimes, some of which may involve moral turpitude and some of which may not."  *Cerezo v. Mukasey*, 512 F.3d 1163, 1169 (9th Cir. 2008) (citation omitted).  For example, the Ninth Circuit noted that "leaving the scene of an accident" constitutes "reprehensible conduct" but "failing to affirmatively report identifying information" does not.  *Id.* (citing to *Garcia-Maldonado v. Gonzales*, 491 F.3d 284, 288–89 (5th Cir. 2007)); *see also Latu v. Mukasey*, 547 F.3d 1070, 1073–74 (9th Cir. 2008) (mirroring the analysis in *Cerezo*).  Because the record before us is inconclusive concerning which crime the respondent was convicted of committing, DHS has not established that the respondent's conviction under section 20001(a) is for a crime involving moral turpitude.  *See Woodby v. INS*, 385 U.S. 276, 286 (1966) (holding the government has the burden of establishing removability by "clear, unequivocal, and convincing evidence"); *Matter of Davey*, 26 I&N Dec. 37, 41 (BIA 2012) ("[A]n inconclusive record is not sufficient.").

[3]  The respondent's motion to accept a reply brief is granted.  Both the respondent and DHS filed motions requesting to increase the page limitation for their respective briefs.  However, as their briefs conform with the page limitation requirements in the most recent version of the BIA Practice Manual, both motions are moot.  BIA Practice Manual §§ 3.3(c)(3), 4.6(b) (Aug. 12, 2024).

of section 20001(a) of the California Vehicle Code.[4]  The respondent was sentenced to 7 years confinement for the first count and 3 years, stayed, for the second count.

DHS argues that the respondent's conviction under count one is a merged crime requiring both a culpable mental state and reprehensible conduct.  The respondent agrees that this conviction requires the elements of both section 191.5(b) and section 20001(c).  But he maintains that it is not for a crime involving moral turpitude, arguing instead that section 191.5(b) lacks a culpable mens rea, and section 20001(c) lacks reprehensible conduct.  Whether DHS has satisfied its burden of demonstrating that the respondent's conviction is for a crime involving moral turpitude is a question of law that we review de novo.  *See* 8 C.F.R. § 1003.1(d)(3)(ii) (2024); *see also* 8 C.F.R. § 1240.8(a) (2024) (stating that DHS must demonstrate by clear and convincing evidence that a respondent is deportable as charged).

To involve moral turpitude, a crime requires two essential elements:  a culpable mental state and reprehensible conduct.  *Matter of Cortes Medina*, 26 I&N Dec. 79, 82 (BIA 2013).  The categorical approach "requires us to focus on the minimum conduct that has a realistic probability of being prosecuted under the statute of conviction, rather than on the facts underlying the respondent's particular violation of that statute."  *Matter of Silva-Trevino*, 26 I&N Dec. 826, 831 (BIA 2016) (citing *Moncrieffe v. Holder*, 569 U.S. 184, 191 (2013)).  The elements of the crime of conviction are compared to the federal generic definition of moral turpitude to determine whether the conduct proscribed in the statute falls within the generic definition.  *Id*.  If the statute is broader than the generic definition, and there is a "realistic probability" that the statute of conviction would be applied to nonturpitudinous conduct, there is no categorical match.  *Id*.

### A. Elements of the Respondent's Compound Conviction

At all relevant times, section 191.5(b) of the California Penal Code defined vehicular manslaughter while intoxicated as follows:

> the unlawful killing of a human being without malice aforethought, in the driving of a vehicle, where the driving was in violation of [driving while intoxicated statutes] and the killing was either the proximate result of the commission of an unlawful act, not amounting to a felony, but without gross negligence, or the proximate result of

---

[4]   A third count included child endangerment under section 273a(b) of the California Penal Code.  The Immigration Judge determined that this conviction was not for a crime of child abuse, child neglect, or child abandonment under section 237(a)(2)(E)(i) of the INA, 8 U.S.C. § 1227(a)(2)(E)(i) (2012).  As the parties do not dispute this finding, this issue has been waived.  *See Matter of Z-Z-O-*, 26 I&N Dec. 586, 586 n.1 (BIA 2015).

the commission of a lawful act that might produce death, in an unlawful manner, but without gross negligence.

The respondent's sentencing enhancement provided that "[a] person who flees the scene of the crime after committing a violation of Section 191.5 . . . upon conviction . . . in addition and consecutive to the punishment prescribed, shall be punished by an additional term of imprisonment of five years in the state prison."  Cal. Vehicle Code § 20001(c) (West 2009).

DHS argues that the combined elements of section 191.5(b) and section 20001(c) should be viewed singularly as one combined crime under the categorical approach.  Agreeing with this position, the Immigration Judge concluded that this enhanced conviction when considered as a combined crime qualifies as a crime involving moral turpitude, basing his conclusion on *Quintero-Cisneros v. Sessions*, 891 F.3d 1197, 1200–01 (9th Cir. 2018).

In *Quintero-Cisneros*, the United States Court of Appeals for the Ninth Circuit assessed whether a conviction for committing "assault of a child in the third degree" with criminal negligence, in conjunction with a sentencing enhancement for having committed the crime "with a sexual motivation" was for sexual abuse of a minor.  891 F.3d at 1199–1202.  The Ninth Circuit concluded that the sentencing enhancement constituted an element of the overall offense because the facts supporting the enhancement are required under Washington State law to be charged in the information and found by a jury beyond a reasonable doubt or admitted by the defendant.  *Id*. at 1201.

This approach to determining elements is consistent with the Board's case law holding that

> any fact (including a fact contained in a sentence enhancement) that serves to increase the maximum penalty for a crime to which a defendant is subject and that is required by the law in the convicting jurisdiction to be found beyond a reasonable doubt by a jury, if not admitted by the defendant, is to be treated as an element of the underlying offense.

*Matter of Martinez-Zapata*, 24 I&N Dec. 424, 426 (BIA 2007) (discussing *Apprendi v. New Jersey*, 530 U.S. 466 (2000)); *accord Matter of German Santos*, 28 I&N Dec. 552, 552 (BIA 2022) ("Regardless of the State's classification, any fact that establishes or increases the permissible range of punishment is an element of the offense for Federal purposes.").

Similarly to Washington, California State law requires sentence-enhancing elements be charged in the information and found beyond a reasonable doubt by a jury. *See People v. Anderson*, 470 P.3d 2, 6 (Cal. 2020) (recognizing that section 1170.1(e) of the California Penal Code requires sentencing enhancements be alleged in the accusatory pleading and either admitted by the defendant or found by the trier of fact).  Moreover, the text of section 20001(c) explicitly states that the enhancement "shall not be

imposed unless the allegation is charged in the accusatory pleading and admitted by the defendant or found to be true by the trier of fact." Cal. Vehicle Code § 20001(c).

We conclude that when the government must prove the elements of a sentencing enhancement beyond a reasonable doubt, those additional elements are combined with the elements of the underlying criminal statute and all the elements are then considered together as one compound crime. Accordingly, the respondent's enhanced conviction under sections 191.5(b) and 20001(c) requires proof of the following elements: (1) the defendant drove a vehicle under the influence of drugs or alcohol in violation of the California Vehicle Code; (2) while driving under the influence, the driver also committed another infraction or an otherwise lawful act that might cause death; (3) the infraction or other act was committed in a negligent manner; (4) the negligent conduct caused the death of another person; (5) the driver knew that he or she had been involved in an accident that injured another person or knew from the nature of the accident that it was probable that another person was injured; and (6) the driver willfully fled the scene of the accident. *E.g.*, *United States v. Gomez-Leon*, 545 F.3d 777, 785–86 (9th Cir. 2008) (citing the Judicial Council of California Criminal Jury Instructions No. 591 (2007) for the elements of a violation of section 191.5(b)), *abrogated on other grounds by Borden v. United States*, 593 U.S. 420 (2021); *see People v. Nordberg*, 117 Cal. Rptr. 3d 558, 565–66 (Cal. Ct. App. 2010) (discussing the knowledge element of the sentencing enhancement); *People v. Vela*, 140 Cal. Rptr. 3d 755, 760–61, 760 n.6, 761 n.7 (Cal. Ct. App. 2012) (discussing the fleeing the scene element).

Although the respondent agrees that the elements of the base offense under section 191.5(b) can be considered together with the sentencing enhancement under section 20001(c), he contends for various reasons that the elements of each statute remain self-contained and separate from each other. He acknowledges that a sentencing enhancement will be considered an element of an underlying offense where it increases the maximum penalty for the crime and is required to be found by a jury beyond a reasonable doubt. *Matter of Martinez-Zapata*, 24 I&N Dec. at 426. He asserts, however, that the sentencing enhancement is a self-contained "element" of the overall offense, essentially arguing that we should view the statutes as two distinct silos that do not interact or intersect but nevertheless constitute a combined crime.

We are not persuaded by the respondent's contentions underlying that argument. The sentencing enhancement under section 20001(c) is not a stand-alone, separate offense, and it is only triggered upon the commission of the predicate offense from which it flows. It cannot be charged on its own, but instead provides additional elements to be proven for the overall offense.

*See* Cal. Vehicle Code § 20001(c). *But cf. Matter of Short*, 20 I&N Dec 136, 139 (BIA 1989) (considering two distinct, stand-alone crimes).

### B. Mental State of Compound Conviction

The respondent's compound conviction contains three mentes reae: (1) a negligence mens rea originating from section 191.5(b) for the actus reus of the driving violation; (2) a knowing mens rea originating from section 20001(c) for knowing that a person was injured; and (3) a willful mens rea for the actus rea of leaving the scene of the accident. DHS asserts the respondent's conviction requires that he willfully left the scene despite having knowledge that he injured another person and further asserts this level of scienter lends the offense sufficient culpability to qualify as morally turpitudinous. *See Nordberg*, 117 Cal. Rptr. 3d at 565 (holding that knowledge of injury is an essential element of the section 20001(c) enhancement). Essentially, DHS asserts that the culpable mental state is supplied by the fifth element of the compound conviction, which provides a knowing mens rea.

The respondent does not contest the presence of a knowing mens rea in his enhanced conviction, but he argues that the mens rea of fleeing the scene cannot be applied to the conduct of the base offense of vehicular manslaughter while intoxicated because they are two discrete acts, each with a separate and distinct mens rea. He further argues that, like in *Quintero-Cisneros,* section 20001(c) supplies a culpable mental state to the respondent's crime, but unlike in *Quintero-Cisneros*, section 20001(c) does not explicitly inject the knowing or willful mens rea into to the base offense of vehicular manslaughter; rather, the knowing or willful mens rea is tied to the separate and subsequent actus reus of fleeing the scene.

We are not convinced that *Quintero-Cisneros* provides for this distinction. The Ninth Circuit emphasized that because the sentencing enhancement in that case was an element, it was considered part of the offense of conviction and the combined offense must be compared to the generic definition under the categorical approach. *See Quintero-Cisneros*, 891 F.3d at 1202. Although the sentencing enhancement in that case differs from section 20001(c) because it modified the motivation with which the defendant committed the base offense, nothing in the Ninth Circuit's analysis suggests that a sentencing enhancement that joins a further act and a mental state to the base offense would have been analyzed differently. *See id.* at 1199. Moreover, at the time of the negligent act resulting in an accident, the knowledge that the respondent had been involved in an injury accident inures, informing the decision to flee. The respondent has not identified any Ninth Circuit case law indicating that the elements of section 20001(c) must

be analyzed separately from the elements of the respondent's underlying conviction.

To constitute a crime involving moral turpitude, the perpetrator must have the requisite level of scienter for the specific actus reus that constitutes the reprehensible conduct, and "both the actus reus and the mens rea must be considered in concert to determine whether the behavior they describe is sufficiently culpable to be labeled morally turpitudinous." *Castrijon-Garcia v. Holder*, 704 F.3d 1205, 1214 (9th Cir. 2013) (quoting *Nicanor-Romero v. Mukasey*, 523 F.3d 992, 999 (9th Cir. 2008)), *overruled in part on other grounds by Ceron v. Holder*, 747 F.3d 773 (9th Cir. 2014) (en banc).

In *Marmolejo-Campos v. Holder*, the Ninth Circuit upheld the Board's conclusion that a simple offense for driving under the influence ("DUI") did not involve moral turpitude, but that moral turpitude inhered in the aggravated DUI conviction in that case because of the added element that the driver, knowing he or she was not allowed to drive (a culpable mens rea), drove anyway (the actus reus). 558 F.3d 903, 914–17 (9th Cir. 2009). The Ninth Circuit recognized that "knowledge [of] driving without a license does not . . . add a knowing or intentional element to [the] DUI because the intent involved [in the DUI] is different;" the mens rea attached to the actus reus of the DUI remained negligence. *Id*. at 912, 915. Nonetheless, the added element of knowingly driving without a license in conjunction with the actus reus of DUI elevates a simple DUI into an aggravated DUI, which in turn makes the offense a crime involving moral turpitude. *Id*. at 915.

Similarly, while section 20001(c) adds a knowing mens rea to the actus reus of fleeing the scene, the mens rea is informed by the preceding accident causing injury. Thus, when the knowledge mens rea is considered with the elements of the base offense, it adds the level of scienter required for a crime involving moral turpitude. Therefore, the enhanced conviction contains a culpable mental state, and the remaining question is whether, in the context of the respondent's conviction, the actus reus of fleeing the scene after having caused the death of another as a result of a negligent act while driving under the influence constitutes reprehensible conduct.

## C. Reprehensible Conduct

The respondent's act—willfully fleeing the scene despite knowing either that he had been involved in an accident that injured another person or that the nature of the accident made it probable that another person was injured—is reprehensible conduct. Conduct is reprehensible if it is "inherently base, vile, or depraved, and contrary to the accepted rules of morality and the duties owed between persons or to society in general." *Matter of Diaz-Lizarraga*, 26 I&N Dec. 847, 849 (BIA 2016) (citation omitted).

In arguing that the combined conviction does not include reprehensible conduct, the respondent focuses exclusively on the elements of section 20001(c) and asserts that the conduct penalized by section 20001(c) does not independently constitute a crime involving moral turpitude. DHS, in contrast, contends that the sentencing enhancement under section 20001(c) alone constitutes a crime involving moral turpitude.

As noted above, we need not consider DHS' contention because section 20001(c) is not a stand-alone offense but instead explicitly states that it is only implicated after a violation of section 191.5 or section 192(1)(c) of the California Penal Code. Moreover, the conduct proscribed by the respondent's conviction is not merely fleeing the scene of a crime. Rather, the elements of the respondent's compound conviction prohibit a person from driving under the influence, negligently committing an act that causes the death of another, and, despite knowing it is probable that someone had been injured, willfully fleeing the scene of the crime.

We agree with DHS that knowingly and willfully fleeing the scene after being involved in an accident causing injury to another person is inherently reprehensible conduct. In *Conejo-Bravo v. Sessions*, the Ninth Circuit held that "a felony conviction for traditional hit and run causing injury" under section 20001(a) of the California Vehicle Code qualifies as a crime involving moral turpitude.[5] 875 F.3d 890, 893 (9th Cir. 2017). The Ninth Circuit noted that "the failure to stop and render aid after being involved in an automobile accident is the type of base behavior that reflects moral turpitude." *Id*. (quoting *Garcia-Maldonado v. Gonzales*, 491 F.3d 284, 290 (5th Cir. 2007)). The respondent's compound conviction essentially requires the same elements as a "traditional hit and run" discussed in *Conejo-Bravo*—the respondent was involved in an accident, knew that he had injured another person or that injury was probable, and fled the scene—and thus, the respondent's conviction also "reflects moral turpitude." *Id.* (citation omitted).

The Ninth Circuit has previously recognized that "[w]ith respect to the actus reus, an additional element can transform a crime that does not involve moral turpitude into one that does." *Moran v. Barr*, 960 F.3d 1158, 1162 (9th Cir. 2020); *see also id*. at 1162–63 (concluding that willfully driving in

---

[5] The Ninth Circuit determined from the plea agreement that Conejo-Bravo had been convicted of being "involved in a car accident that led to injury and . . . fle[eing] the scene," referring to this as a "traditional hit and run." *Conejo-Bravo*, 875 F.3d at 893. Although a conviction under section 20001(a) "is commonly referred to as a 'hit and run,' the term is something of a misnomer; the offense is 'more accurately described as fleeing the scene of an injury accident.'" *People v. Martinez*, 394 P.3d 1066, 1102 (Cal. 2017) (citation omitted). "That is to say, 'the act made criminal' under the statute 'is not the "hitting" but the "running."'" *Id*. (citation omitted).

the wrong direction while willfully fleeing a pursuing police officer" is a crime involving moral turpitude because it "inherently *increases the risk of harm* to others during the flight from police"); *Altayar v. Barr*, 947 F.3d 544, 552 (9th Cir. 2020) (finding that assault with a "deadly weapon or dangerous instrument" involves moral turpitude even though simple assault does not). As discussed above, both the Ninth Circuit and the Board have recognized that while a simple DUI offense is not a crime involving moral turpitude, the addition of aggravating elements can infuse the offense with moral turpitude. *See Marmolejo-Campos*, 558 F.3d at 914–17; *Matter of Lopez-Meza*, 22 I&N Dec. 1188, 1194–95 (BIA 1999) (holding that while simple DUI is not a crime involving moral turpitude because, in part, it does not require a culpable mental state, moral turpitude inheres when the crime is committed by an individual who knows that he or she is prohibited from driving).

As the Board concluded in *Matter of Lopez-Meza*, moral turpitude does "not arise simply from an amalgamation of distinct separate offenses" but "from a building together of elements by which the criminalized conduct deviates further and further from the private and social duties that persons owe to one another and to society in general." 22 I&N Dec. at 1196. Similarly, with the respondent's compound conviction, moral turpitude does not inhere simply in fleeing the scene but is a characteristic of the combined elements considered in total; moral turpitude is present when the DUI driver willfully flees after causing a fatal accident even though he or she knows it is probable that someone was injured. *See Conejo-Bravo*, 875 F.3d at 893.

The respondent argues that fleeing the scene as described in section 20001(c) is not necessarily reprehensible conduct because it does not require that the act of fleeing be the proximate cause of the harm or risk of harm. The respondent further argues that "non-fraudulent crimes of moral turpitude generally involve an intent to injure, actual injury, or a protected class of victims." *Castrijon-Garcia*, 704 F.3d at 1213.

We are unpersuaded by this argument. "[T]he absence of an intent to injure, an injury to persons, or a protected class of victims is not determinative."[6] *Matter of Ortega-Lopez*, 27 I&N Dec. 382, 387 (BIA 2018), *aff'd*, 978 F.3d 680 (9th Cir. 2020); *see also Betansos* v. *Barr*, 928 F.3d 1133, 1140–42 (9th Cir. 2019) (deferring to the Board's decision in *Matter of Cortes Medina*, 26 I&N Dec. at 84, which rejected the requirement that a crime involving moral turpitude involve intent to harm, actual harm, or a protected class). Moreover, in cases like the respondent's where the offense requires actual injury or a risk of injury, case law does not support the respondent's argument that the reprehensible conduct must be the

---

[6] We do not reach DHS' argument that the respondent's compound conviction affects a protected class of persons.

proximate cause of the injury or risk.  *See, e.g.*, *Marmolejo-Campos*, 558 F.3d at 914–15 (holding that the additional element of knowing one is not allowed to drive rendered a DUI offense a crime involving moral turpitude even though knowingly driving without a license was not required to have been the proximate cause of harm or a further risk of harm).

The Ninth Circuit has held that a hit and run causing injury is a crime involving moral turpitude even when a conviction did not require the culpable act—knowingly fleeing the scene—be the proximate cause of the actual injury.  *See Conejo-Bravo*, 875 F.3d at 893.  Rather, the Ninth Circuit has recognized that it is the fleeing the scene despite knowing a person has been injured that is the reprehensible act, not the injury itself.  *See Cerezo*, 512 F.3d at 1169; *see also Conejo-Bravo*, 875 F.3d at 893 (emphasizing that the conviction required the driver to have fled despite knowing he hit another person).  *See generally Martinez*, 394 P.3d 1093, 1102 (Cal. 2017) (discussing that section 20001(a) of the California Vehicle Code criminalizes the fleeing of the accident not the underlying accident causing injury).

The respondent asserts the term "fleeing" can be deceptive because he claims that a person's sentence can be enhanced under section 20001(c) for fleeing the scene even where that person attempted to render aid.[7]  He has not, however, identified any case law where section 20001(c) was applied to enhance the sentence of a defendant who rendered aid.

The respondent also argues that "flees the scene" under section 20001(c) does not necessarily constitute reprehensible conduct because unlike the statutes discussed in *Cerezo*, 512 F.3d at 1166–67, *Conejo-Bravo*, 875 F.3d at 892–93, and *Garcia-Maldonado*, 491 F.3d at 288–89, section 20001(c) does not explicitly require that a person render aid to injured persons.  Cal. Vehicle Code § 20001(c).  He notes the language from *Garcia-Maldonado,* which *Conejo-Bravo* cites affirmingly, is that "the failure to stop and render aid" reflects moral turpitude.[8]  *Garcia-Maldonado*, 491 F.3d at 290; *accord Conejo-Bravo*, 875 F.3d at 893.  He further argues that there is a distinction between failing to stop and failing to render aid,

---

[7]  The respondent cites to two cases discussing section 20001(a) of the California Vehicle Code—which criminalizes the failure to stop the vehicle at the scene of an accident and fulfill specific requirements—but neither demonstrates that a defendant was convicted of failing to stop at the scene despite rendering aid.  *See People v. Bellah*, 46 Cal. Rptr. 598, 599–600 (Cal. Dist. Ct. App. 1965) (holding the defendant failed to render aid to the motorcyclist he hit with his car, and the defendant's actions driving his passenger to the hospital did not absolve the defendant of his duty to render aid to the motorcyclist victim); *People v. Nuno,* 236 Cal. Rptr. 5th 578, 581 (Cal. Ct. App. 2018) (finding that the defendant drove away after hitting the victim with his car, called the police, and the police drove him back to the scene).

[8]  The defendant in *Conejo-Bravo* explicitly conceded in his plea agreement that he "failed to render assistance to the injured person.  *Conejo-Bravo*, 875 F.3d at 892.

that the conduct found to be reprehensible in *Conejo-Bravo* is the failure to render aid, and that therefore, *Conejo-Bravo* is not dispositive as to whether moral turpitude inheres in section 20001(c).

DHS argues that a driver fleeing the scene of an accident knowing he or she has injured a person, or probably injured a person, necessarily fails to render aid. As applied, there appears to be little distinction attributed between section 20001(a) of the California Vehicle Code and the sentencing enhancement in subsection (c) as to moral duties owed to the victim. *See People v. Pineda*, No. F074962, 2019 WL 3406787, *9–11 (Cal. Ct. App. July 29, 2019); *see also Nordberg*, 117 Cal. Rptr. 3d at 564–65 (describing the section 20001(c) sentencing enhancement as being "conceptually related" to the section 20001(a) felony hit and run offense). In *Pineda*, 2019 WL 3406787, at *10–11, the California court struck down a sentencing enhancement under section 20001(c), finding the record did not demonstrate beyond a reasonable doubt that the defendant "fled the scene" in light of her testimony that she had stopped her vehicle, tried to reach the victim but could not, and then after several minutes walked away to get help because she did not have a cellphone. Thus, where a driver stops and attempts to render aid and then leaves the scene to get help, the driver's actions have not met the definition of "flees the scene" under section 20001(c). *See id*.

The respondent asserts that the Ninth Circuit has repeatedly held that "[w]hen the only 'benefit' the individual obtains is to impede the enforcement of the law, the crime does not involve moral turpitude." *Blanco v. Mukasey,* 518 F.3d 714, 719 (9th Cir. 2008); *accord Latu v. Mukasey*, 547 F.3d 1070, 1074 (9th Cir. 2008). As the Ninth Circuit explains in *Cerezo*, crimes involving moral turpitude "are of basically two types, 'those involving fraud and those involving grave acts of baseness or depravity.'" 512 F.3d at 1166 (quoting *Carty v. Ashcroft*, 395 F.3d 1081, 1083 (9th Cir. 2005)). Both *Blanco* and *Latu*, the cases cited by the respondent to support his argument, are discussing the first category, and neither involves the knowledge that a victim's injuries might produce death, which makes them of limited relevance to the analysis of this case. *See Blanco*, 518 F.3d at 718–20 (assessing whether a conviction for false identification to a peace officer "involves fraudulent conduct, and thus is a crime involving moral turpitude"); *Latu*, 548 F.3d at 1075 (finding the Hawaiian statute at issue is not a crime involving moral turpitude based on fraud because it "does not require an intent to 'obtain something tangible.'" (citation omitted)).

The respondent also contends that section 20001(c) does not implicate moral turpitude because the purpose behind this provision is to preserve evidence of a DUI offense and act as a deterrent. He cites *People v. Vela*, 140 Cal. Rptr. 3d at 760, to support his claim that the only conduct proscribed

by section 20001(c) is attempting to evade criminal responsibility.[9]  The respondent also cites to *People v. Calhoun*, 150 P.3d 220, 223 (Cal. 2007), which observes that section 20001(c) was created, following the killing of a girl by a recidivist drunk driver, to deter people from leaving an accident where a death may have occurred.  The California Supreme Court recognized in that case that when drivers "are not caught immediately, it is hard if not impossible to later prove that they were DUI."[10]  *Id*. (citation omitted).

We find the respondent's attempts to "take the precipitating event for legislation and use that event to limit the scope to the law" to be unpersuasive.  *Calhoun*, 150 P.3d at 223.  Moreover, the intentions of the State of California in implementing this statute are not determinative regarding whether the offense constitutes a crime involving moral turpitude under Federal law.  *See Castrijon-Garcia*, 704 F.3d at 1211 (holding that State assessments of a crimes' moral turpitude are "not of great weight" (citation omitted)); *see also Ceron*, 747 F.3d at 780 (requiring analysis of crimes involving moral turpitude without regard to the "label or title that a state assigns to a crime").

Considering the added elements of the respondent's sentencing enhancement as elements of the underlying offense, we conclude that the respondent's act of willfully fleeing the scene despite knowing that he had been involved in an accident that injured another person, or that from the nature of the accident it was probable that another person was injured, is reprehensible conduct and requires a culpable mens rea.  We therefore affirm the Immigration Judge's conclusion that the respondent's compound conviction under section 191.5(b) of the California Penal Code enhanced by section 20001(c) of the California Vehicle Code is categorically for a crime involving moral turpitude rendering him removable under section 237(a)(2)(A)(i) of the INA, 8 U.S.C. § 1227(a)(2)(A)(i).

---

[9]  The defendant in *Vela* argued that section 20001(c) merely required her to stop her vehicle.  140 Cal. Rptr. 3d at 759.  She further argued that in crashing her car into a wall before fleeing on foot, she stopped her car, thereby complying with section 20001(c).  *Id.* However, the court rejected this argument, finding that section 20001(c) prohibited fleeing the scene, which required not only stopping the car but also not running away before law enforcement arrived.  *Id*. at 760–61 (discussing the ordinary meaning of "flee").

[10]  Despite these observations regarding the origin of section 20001(c), the court in *Calhoun* concluded that the sentencing enhancement applied equally to an aider and abettor of vehicular manslaughter who fled the scene of the crime after drag racing the driver that caused the accident.  150 P.3d at 221–23.

## II. APPLICATIONS FOR RELIEF

### A. Waiver of Inadmissibility Under Section 212(h)

We affirm the Immigration Judge's conclusion that the respondent did not demonstrate he was prima facie eligible for a waiver of inadmissibility under section 212(h) of the INA, 8 U.S.C. § 1182(h). The Board has previously held that a section 212(h) waiver is not available on a stand-alone basis without a concurrently filed application for a visa, admission, or adjustment of status. *Matter of Rivas*, 26 I&N Dec. 130, 132–33 (BIA 2013), *aff'd*, 765 F.3d 1324 (11th 2014); *see also Mtoched v. Lynch*, 786 F.3d 1210, 1218 (9th Cir. 2015) (deferring to *Matter of Rivas*). The respondent did not provide evidence that he applied for adjustment of status or is seeking admission into the United States. Therefore, he has not demonstrated that he is prima facie eligible for a section 212(h) waiver.

We are unconvinced by the respondent's appellate argument that he was not afforded an opportunity to submit his waiver application. The Immigration Judge directed the respondent to brief his eligibility for relief and set briefing and application deadlines. The respondent only filed an application for cancellation of removal. Additionally, because the respondent did not dispute or address DHS' arguments against eligibility for relief under sections 212(h), 240B(b), and 245 of the INA, 8 U.S.C. §§ 1182(h), 1229c(b), 1255, the Immigration Judge permissibly granted DHS' motion to pretermit these forms of relief.

Additionally, the respondent has not demonstrated that he was denied due process. To prevail on a due process claim, the respondent must show not only error but that the error resulted in substantial prejudice. *Lata v. INS*, 204 F.3d 1241, 1246 (9th Cir. 2000). The respondent's statements, through counsel, are not evidence of the respondent's eligibility for a section 212(h) waiver. *See Matter of Ramirez-Sanchez*, 17 I&N Dec. 503, 506 (BIA 1980). The respondent has not presented evidence of eligibility for relief and has not established that the proceedings were unfair. *See, e.g.*, *Matter of Sibrun*, 18 I&N Dec. 354, 356 (BIA 1983) ("Prejudice is the *sine qua non* for establishing that a hearing was unfair."). We therefore affirm the Immigration Judge's conclusion that the respondent is ineligible for a section 212(h) waiver.

### B. Cancellation of Removal Under Section 240A(a)

We affirm the Immigration Judge's determination that the respondent is not eligible for cancellation of removal because he did not demonstrate that he resided in the United States continuously for 7 years after having been admitted in any status. INA § 240A(a)(2), 8 U.S.C. § 1229b(a)(2). The

respondent resided in the United States as a nonimmigrant from September 1997 to May 8, 2004, amounting to 6 years and 8 months. He departed the United States on May 8, 2004, and lived abroad for 3 years and 4 months. He returned to the United States on September 7, 2007, on an immigrant visa, and was admitted as a lawful permanent resident. As discussed above, the respondent committed a crime involving moral turpitude on March 22, 2008, which terminated the accrual of continuous residence. *See* INA § 240A(d)(1)(B), 8 U.S.C. § 1229b(d)(1)(B).

Although the respondent claims he maintained his residence in the United States during his 3-year and 4-month absence, we find no error of fact or law in the Immigration Judge's determination that the respondent's lengthy departure from the United States interrupted his accrual of 7 years of continuous residence. *See* INA § 240A(a)(2), 8 U.S.C. § 1229b(a)(2). The Immigration Judge observed that while outside the United States, the respondent was employed, closed his U.S.-based business, and took care of a sick family member in India. *See Alcarez-Garcia v. Ashcroft*, 293 F.3d 1155, 1157 (9th Cir. 2002) (recognizing that residence is an "inquiry of objective fact"). These factual findings are not clearly erroneous. 8 C.F.R. § 1003.1(d)(3)(i). The respondent's intent to return to the United States was insufficient to overcome these facts alongside his lengthy absence. *See* INA § 101(a)(33), 8 U.S.C. § 1101(a)(33) (defining "residence" as a person's "principal, actual dwelling place in fact, without regard to intent"); *De Rodriguez v. Holder*, 724 F.3d 1147, 1151 (9th Cir. 2013) (same).

We are unpersuaded by the respondent's argument that he continued to accrue residence in the United States during the first 4 months of his absence. The Immigration Judge's determination of residence is supported by objective facts, including that the respondent lived in a fixed location and was not travelling during the first 4 months. *See Alcarez-Garcia*, 293 F.3d at 1157. The respondent does not identify any controlling authority undermining this determination.

We are further unpersuaded by the respondent's argument that the Immigration Judge gave undue weight to the respondent's physical absence. Citing to *De Rodriguez*, 724 F.3d at 1151, the respondent maintains that a temporary change in dwelling does not create a new residence. However, the respondent's 3-year and 4-month absence during which he was employed abroad is not analogous to the 13-day trip abroad to visit family found insufficient by the Ninth Circuit to end the period of continuous residence in *De Rodriguez*. We therefore conclude the respondent did not meet his burden of proving eligibility for cancellation of removal. *See* 8 C.F.R. § 1240.8(d). The respondent's appeal will be dismissed.

**ORDER:** The appeal is dismissed.

*DISSENTING OPINION:*  Andrea Sáenz, Appellate Immigration Judge

This case presents a complex set of criminal statutes raising difficult questions, and I appreciate the majority's detailed analysis.  However, I cannot agree that the elements of the respondent's conviction under section 191.5(b) of the California Penal Code, as enhanced by section 20001(c) of the California Vehicle Code, constitute a crime involving moral turpitude.  First, I acknowledge that the combined offense contains a willful mens rea, but only as to the act contained within the section 20001(c) sentencing enhancement of failing to stop at the scene of a car accident in which the driver knew, or knew it was probable, that someone had been injured.  This combination of mens rea and conduct does not constitute a crime involving moral turpitude under our traditional analysis, as it contains neither an "evil" or "vicious" intent nor reprehensible conduct.  *See Matter of Solon*, 24 I&N Dec. 239, 240–41 (BIA 2007).

The majority states that they are analyzing a compound conviction made up of the elements of the base offense and the sentencing enhancement.  However, I do not see what role the base offense plays in the conclusion that the respondent's offense is a crime involving moral turpitude.  We all seem to agree that as unquestionably serious as it is to cause the death of another in a car accident, the base section 191.5(b) offense is committed negligently, not with any higher intent, and thus cannot constitute a crime involving moral turpitude on its own.  *See Matter of Tavdidishvili*, 27 I&N Dec. 142, 144 (BIA 2017).  Thus, the driver may commit the actions in the sentencing enhancement—the failure to stop—without knowledge that his negligent conduct has caused a death.  The failure to stop is best characterized as a regulatory offense, not "reprehensible" on its own, under the case law of the United States Court of Appeals for the Ninth Circuit.  *See Latu v. Mukasey*, 547 F.3d 1070, 1074–75 (9th Cir. 2008) (finding that a Hawaii conviction for failing to stop after an accident causing substantial injury was not a crime involving moral turpitude because it covered regulatory violations and because obstructing government operations did not make the offense akin to a fraud crime); *Blanco v. Mukasey*, 518 F.3d 714, 719–20 (9th Cir. 2008) (collecting Ninth Circuit cases finding other government obstruction offenses not to be crimes involving moral turpitude).  I cannot agree that it becomes reprehensible when occurring shortly after the base offense—also not a crime involving moral turpitude—has happened.  *See Matter of Short*, 20 I&N Dec. 136, 139 (BIA 1989) ("Moral turpitude cannot be viewed to arise from some undefined synergism by which two offenses are combined to create a crime involving moral turpitude, where each crime individually does not involve moral turpitude."); *see also Matter of Lopez-Meza*, 22 I&N Dec. 1188, 1203–04 (BIA 1999) (Rosenberg, concurring and dissenting) (disagreeing with the majority's conclusion that the combination of a driving

under the influence ("DUI") offense that lacked the sufficient mens rea and a driving without a license offense that lacked reprehensible conduct changed the "nature" of either act).

The majority holds that the compound conviction in this case is a crime involving moral turpitude because it matches the "traditional hit and run" discussed in *Conejo-Bravo v. Sessions*, 875 F.3d 890, 893 (9th Cir. 2017). But *Conejo-Bravo* is about a conviction under section 20001(a) of the California Vehicle Code, not section 20001(c). The Ninth Circuit does not define a "traditional hit and run" in its brief decision in *Conejo-Bravo*, 875 F.3d at 893, but the respondent persuasively argues that it requires the element of a failure to render aid, and that is not an element of the respondent's conviction under sections 191.5(b) and 20001(c). It is not the respondent's burden to prove that one's conviction can be enhanced under section 20001(c) even after attempting to render aid. It is enough to show that failure to render aid is not an element of the offense, and thus it is irrelevant if that fact happens to be mentioned in reported cases. *Descamps v. United States*, 570 U.S. 254, 270 (2013) (observing that defendants have "little incentive to contest facts that are not elements of the charged offense—and may have good reason not to," as doing so may confuse or irritate the jury or judge). In effect, in reading a failure to render aid into section 20001(c), the majority seems to convert this conviction into a version of section 20001(a). We must evaluate each conviction on its own merits, and the elements of the section 191.5(b) and section 20001(c) conviction do not add up to a crime involving moral turpitude.

I do not find this offense to be the same as the aggravated DUI offenses in *Matter of Lopez-Meza*, 22 I&N Dec. at 1195–96, and *Marmolejo-Campos v. Holder*, 558 F.3d 903, 912 (9th Cir. 2009) (en banc), where the respondents had knowledge of their suspended license at the same time that they drove while intoxicated.[1] The respondent's conviction here comprises two separate

---

[1] Although I distinguish this case from *Matter of Lopez-Meza*, I must note that that decision has caused problems in our crime involving moral turpitude case law, as it diverged without a reasoned basis from the Board's prior principle that discrete actions that are not crimes involving moral turpitude cannot be added together to create a crime involving moral turpitude. *See Matter of Short*, 20 I&N Dec. at 139. *Matter of Lopez-Meza* acknowledged, without resolving, a tension in our case law, long-running even then, between the historical requirement that crimes involving moral turpitude require a heightened intent element and a line of cases finding this optional. 22 I&N Dec. at 1192–93 (listing cases with a "*but see*" signal without further discussion). This decision has led to subsequent case law that I believe unwarrantedly dispenses with elements that we have previously considered requirements of a crime involving moral turpitude. *See, e.g.*, *Matter of Jimenez-Cedillo*, 27 I&N Dec. 782, 791–92 (BIA 2020) (finding even a strict liability offense may be a crime involving moral turpitude if there is a "community consensus" it covers immoral conduct); *Matter of J-G-P-*, 27 I&N Dec. 642, 646–47 (BIA 2019) (finding a menacing offense was a crime involving moral turpitude despite no element of intent to

acts, not occurring at the same time, with divergent mental states and actions, which are individually not crimes involving moral turpitude. While I agree that the section 20001(c) enhancement elements are properly treated as additional elements of the respondent's overall conviction, I do not find that when the two acts at issue happen one after the other, a crime involving moral turpitude is created, even if we are permitted to stack or layer both acts under the formal heading of a single enhanced conviction. *See Matter of Torres-Varela*, 23 I&N Dec. 78, 86 (BIA 2001) (holding that multiple DUI convictions do not "aggregate" into a conviction for a crime involving moral turpitude); *Matter of Short*, 20 I&N Dec. at 139 (holding that simple assault with intent to commit a felony, comprised of two offenses closely connected in time, is not a crime involving moral turpitude where neither simple assault nor the underlying felony was a crime involving moral turpitude); *see also Marmolejo-Campos*, 558 F.3d at 932 (Berzon, J., dissenting) ("[E]vil intent cannot float about in the ether; it must be grounded in one act or another."). The two parts of this conviction are not one act in which I can find evil intent.

I would also find that the respondent's conviction under section 20001(a) of the California Vehicle Code is not for a crime involving moral turpitude because it is not clear under which subsection of that statute he was convicted, for the same reasons as the majority notes. The Immigration Judge's most recent decision did not apply the modified categorical approach correctly, concluding that the respondent was convicted of a portion of the statute based on documents that do not necessarily show the basis for his conviction. I would thus find that DHS did not meet its burden to show that the respondent's section 20001(a) conviction is for a crime involving moral turpitude.

I must acknowledge the serious and tragic nature of the criminal conduct in this case, which resulted in the death of an innocent person. The categorical approach requires us to closely examine the elements of each offense in determining their immigration consequences, putting aside the individual facts of each case, even when those facts are difficult, as they are here. *See Mellouli v. Lynch*, 575 U.S. 798, 805 (2015) (the noncitizen's "actual conduct is irrelevant to the inquiry, as the adjudicator must 'presume that the conviction rested upon nothing more than the least of the acts criminalized'") (citation omitted). Here, the respondent was duly punished

---

injure or actual injury), *disagreed with by Flores-Vasquez v. Garland*, 80 F.4th 921, 926–30 (9th Cir. 2023). I thus share the concerns of the dissent in *Marmolejo-Campos* as to whether *Matter of Lopez-Meza* merited deference under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), overruled by *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244 (2024), and believe this case law is ripe for reassessment. *Marmolejo-Campos*, 558 F.3d at 921–36 (Berzon, J., dissenting). However, even applying *Matter of Lopez-Meza* here, I find the respondent's conviction under section 191.5(b) and section 20001(c) to be farther afield.

for his conduct under State statutes that are intentionally broad: they contain low burdens of proof as to mens rea and cover a wide variety of regulatory violations. As a result, for the above reasons, I would find DHS' charges of removability are not proven by clear and convincing evidence and would thus not reach the additional relief issues reached by the majority decision. I would grant the respondent's motion to terminate removal proceedings.